645 A.2d 1333

In re ESTATE OF Herman J. ISRAEL, Late of the City of Lower Burrell, Westmoreland County, Pennsylvania, Deceased.

Appeal of Betty Ann TAYLOR, an Individual and Henry L. Israel, an Individual.

Superior Court of Pennsylvania.

Argued April 5, 1994.

Filed July 27, 1994.

348

Robert O. Lampl, Pittsburgh, for appellants.

Gerald E. Arth, Philadelphia, for Ins. Com'n, participating party.

Before McEWEN, DEL SOLE and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the order of the trial court which granted appellee-Insurance Commissioner's motion to compel deposition answers/produce documents and denied appellant-executors' motion for a protective order.

Appellants present the following issues for review: (1) whether the trial court erred in granting appellee's discovery motion to compel appellants to answer questions and produce their private/personal records where appellants, in their individual capacities, are not parties to this action; (2) whether the trial court erred in granting appellee's discovery motion because it is overbroad; (3) whether the trial court erred in granting appellee's discovery motion where appellee failed to establish good cause to support her discovery request; and (4) whether the trial court erred in granting appellee's discovery motion to compel the production of appellee's personal documents where compliance will cause unreasonable annoyance, embarrassment, and expense to appellants. For the reasons set forth below, we quash this appeal.

It is necessary to recount the facts and history of this case. In 1968, Herman J. Israel and other individuals assumed ownership of the Rockwood Insurance Company (RIC) following its release from rehabilitation by the Insurance Commissioner. Mr. Israel's and the other owners' management of the company subsequently spawned investigations by the United States Attorney's Office and the Pennsylvania Insurance Department during the mid–1970s. As a result of these investigations, Mr. Israel ultimately entered into consent agreements with the federal and state authorities pursuant to which he was to divest himself of stock and resign his position as chairman of RIC's board of directors. Mr. Israel further agreed not to accept a position as an officer, director or employee of RIC. Notwithstanding his agreement, Mr. Israel

and the other RIC directors/officers reorganized the company in 1981 such that it became a wholly-owned subsidiary of Rockwood Holding Company (RHC).

Following the reorganization, RHC created the Rockwood Energy and Mineral Corporation (REMCORP), which was a wholly-owned subsidiary of RIC. In 1984, REMCORP purchased mining equipment from Mr. Israel for the sum of $750,000. RHC/RIC later determined that the equipment sold to REMCORP was not worth this amount. Consequently, RHC's directors recommended that Mr. Israel execute a promissory note in the sum of $500,000 in favor of REMCORP. Mr. Israel executed the note in 1985, but made it payable to RHC rather than REMCORP. No payments were made on the note, despite demand from RHC. RHC did not institute proceedings to collect on the note.

After the reorganization of RIC, the officers and directors of RHC engaged in a series of business transactions which resulted in substantial economic losses to RIC and REMCORP. In addition, several audits disclosed that RIC was grossly underreserved. By 1990, the Insurance Commissioner placed RIC into rehabilitation pursuant to a joint voluntary petition between RIC and the Insurance Commissioner. The rehabilitation plan was unsuccessful and the Insurance Commissioner thereafter placed RIC into liquidation. As RIC's liquidator, the Insurance Commissioner instituted suit in Commonwealth Court against Herman Israel as well as the directors and officers of RHC. *See Insurance Commissioner of the Commonwealth of Pennsylvania, as Liquidator of Rockwood Insurance Co. and Rockwood Energy and Mineral Corp. v. Rockwood Holding Company, et al.*, 158 Pa.Cmwlth. 258, 632 A.2d 335 (1993).

In the course of his involvement with RHC, RIC and REMCORP, Mr. Israel engaged in certain mining operations which resulted in the pollution of streams near the mine. Consequently, actions have been instituted by the Pennsylvania Department of Environmental Resources (DER) and others against Mr. Israel and REMCORP. *See Ingram Coal Company, et al. v. Commonwealth of Pennsylvania, Depart-*

*ment of Environmental Resources,* No. 88H507 (compliance order issued by DER);[1] *A.J. Palumbo v. Clark Ingram, et al. v. Herman Israel,* No. 86–1681–CD (Clearfield County); *Clark Ingram v. Herman Israel and REMCORP,* No. 89–108 (Elk County).[2]

Mr. Israel also obtained a loan for the sum of $50,000 from First Seneca Bank (FSB) in 1983. Payments on the FSB loan were current until Mr. Israel's death. Notwithstanding the existence of the FSB loan, the promissory note to RHC, and the other various actions, Mr. Israel began making large gifts of cash and personalty to appellants, Henry L. Israel and Betty Ann Taylor, as well as to Mrs. Taylor's husband and son in 1983.[3] These gifts continued until Herman Israel's death on September 28, 1989.

Herman Israel died testate; his will nominated appellants as the executors of his estate. Following issuance of letters testamentary and submission of the will for probate, FSB and RHC filed claims against the estate. The executors filed an account in November, 1992 to which FSB, DER, and the Ingrams objected. Objections were also filed by appellee, the Insurance Commissioner of the Commonwealth of Pennsylvania, Cynthia Maleski, in January, 1993. After pleadings pertaining to the propriety of the objections were filed, the trial court dismissed appellants' petitions and agreed to hear the objections.

The parties thereafter attempted to engage in discovery, and both Henry Israel and Betty Ann Taylor were scheduled to be deposed. During Mrs. Taylor's deposition, she was

1. The DER action was appealed to the Environmental Hearing Board, at EHB docket No. 88–291–F, and the Commonwealth Court, Nos. 1075 and 1091 C.D. 1990, 141 Pa.Commw. 324, 595 A.2d 733 (1991). Further appeals were denied by the Pennsylvania and United States Supreme Court. *See Ingram v. DER,* 530 Pa. 648, 607 A.2d 257 (1992); *Ingram v. DER,* —— U.S. ——, 113 S.Ct. 329, 121 L.Ed.2d 248 (1992).

2. Clark Ingram, George Ingram, Gary Ingram and Gregory Ingram (the Ingrams) were involved in the operation of Ingram Coal Company, which was acquired by REMCORP.

3. Henry L. Israel and Betty Ann Taylor are the adult children of Herman Israel.

instructed by her counsel not to answer any of appellee's questions relating to the gifts which she had received from her father. Mrs. Taylor also refused appellee's request to produce documents involving these transactions. As a result, appellee filed a motion to compel appellants' compliance with the discovery request. Appellants opposed this motion and responded with a motion for protective order. After argument on the motions, the trial court granted appellee's motion but denied appellants' request for a protective order. Appellants' thereafter initiated this appeal from the trial court's order.[4]

▪ It is a fundamental principle of law that an appeal will lie only from a final order unless otherwise permitted by rule or statute.[5] *Motheral v. Burkhart*, 400 Pa.Super. 408, 414, 583 A.2d 1180, 1183 (1990) (*en banc*). *See also* 42 Pa.C.S.A. § 742 (providing that the Superior Court shall have exclusive appellate jurisdiction over all appeals from final orders of the courts

4. Neither FSB, DER, the Ingrams nor the Estate of Herman Israel are participants in this appeal. After filing their appeal, appellants filed a motion for stay of proceedings pending appeal. The lower court denied this motion. Motions for supersedeas filed both in this court and Supreme Court have likewise been denied. In addition to these motions, appellee filed a motion to quash the appeal. This court denied the motion without prejudice to appellee to address this matter in oral argument.

5. We are cognizant of the changes made to the Pennsylvania Rules of Appellate Procedure concerning the finality and appealability of orders. *See* Pa.R.A.P., Rules 311, 313 and 341, 42 Pa.C.S.A. and notes thereto (as amended/adopted May 6, 1992, effective July 6, 1992). As initially promulgated, the amended rules only applied to orders entered in actions or proceedings which originally commenced after July 6, 1992. *See id.; Noll v. Harrisburg Area YMCA*, 537 Pa. 274, —— n. 2, 643 A.2d 81, 84 n. 2 (1994). However, the Supreme Court subsequently directed that the amended rules shall apply to all cases in which orders were entered on or after the effective date, regardless of the date on which the action or proceeding was originally commenced. *See* Order of January 10, 1994, effective March 1, 1994, *reprinted in* Notes to Rules 311, 313 and 341, *supra*. The January 10 order of the Supreme Court is inapplicable here since these proceedings were commenced in 1989 when the decedent's will was submitted for probate, and the trial court's order was entered on September 28, 1993. *See id.* (providing that the Supreme Court's Order of January 10 does not affect orders entered after July 6, 1992 but before March 1, 1994 where the case originally commenced on or before July 6, 1992). We must accordingly ascertain whether this order may be appealed pursuant to the pre-July 6, 1992 rules and caselaw.

of common pleas). We must therefore ascertain whether the trial court's order is a final appealable order because the question of appealability implicates the jurisdiction of our court. *Motheral v. Burkhart,* 400 Pa.Super. at 414, 583 A.2d at 1183–1184; 42 Pa.C.S.A. § 742, *supra.* The appellate courts have defined a final order as:

> one which ends the litigation, or alternatively disposes of the entire case. Conversely phrased, an order is interlocutory and not final unless it effectively puts the litigant out of court. Whether an order is final and appealable is a judicial determination which cannot be made without an examination of the order's practical ramifications. In making this determination, we are guided by the Supreme Court's statement that a pivotal consideration in determining whether an order is final and appealable is whether the plaintiff aggrieved by it has, for purposes of the particular action, been put "out of court" on all theories of recovery asserted against a given defendant for a given loss.

*Motheral v. Burkhart,* 400 Pa.Super. at 414–415, 583 A.2d at 1184 (citations and quotation marks omitted).

As applied here, it is clear that the trial court's order neither ends the litigation nor puts the parties out of court. Rather, the order does nothing more than direct appellants to comply with appellee's discovery request. The appellate courts have long held that discovery orders are interlocutory and unappealable. *See, e.g., Pennsylvania Human Relations Commission v. Jones & Laughlin Steel Corp.,* 483 Pa. 35, 36, 394 A.2d 525, 526 (1978); *Kine v. Forman,* 412 Pa. 163, 165, 194 A.2d 175, 176 (1963); *Mackowain v. Gulf Oil Corp.,* 369 Pa. 581, 582, 87 A.2d 314, 314 (1952); *Young v. Bradford County Telephone Co.,* 346 Pa. 90, 94, 29 A.2d 533, 535 (1943); *Joyce & Associates v. Pivirotto,* 358 Pa.Super. 50, 51–52, 516 A.2d 763, 764 (1986); *McManus v. Chubb Group of Insurance Companies,* 342 Pa.Super. 405, 408–410, 493 A.2d 84, 86–87 (1985). Consequently, the trial court's order cannot be classified as being final and appealable.

 However, our inquiry is not at an end as we must consider whether the order may be deemed final and appealable under the collateral order doctrine. Pursuant to this principle, an order may be appealed if: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *Pugar v. Greco,* 483 Pa. 68, 73, 394 A.2d 542, 545 (1978) (quoting *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–1226, 93 L.Ed. 1528, 1536 (1949)). All three elements must be satisfied for an order to qualify under *Cohen. Fried v. Fried,* 509 Pa. 89, 95, 501 A.2d 211, 214 (1985). *See also Pugar v. Greco,* 483 Pa. at 74, 394 A.2d at 545 (although order denying leave to appeal without payment of the arbitration fee was collateral to the basic liability action and involved a right too important to be denied review, the Supreme Court held that the order was interlocutory because it did not adversely affect a claimed right which would be irreparably lost if review is postponed); *Gottschall v. Jones & Laughlin Steel Corp.,* 333 Pa.Super. 493, 500, 482 A.2d 979, 983 (1984), *cert. denied,* 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985) (court declined to consider the remaining elements where the plaintiff could not satisfy the first requirement of the three-part *Cohen* test; since the first prong was not met, the court deemed the order to be interlocutory and quashed the appeal).

In the instant case, the first prong of the *Cohen* test has not been met because the order appealed from is not separable from and collateral to the proceedings. The underlying action involves objections to the account filed by appellants and other parties. Among other things, one question to be decided is whether the account, as filed, is in error because the executors failed to include assets which were allegedly fraudulently transferred by the decedent prior to his death. To resolve the objections, the lower court must necessarily determine whether the transfers were fraudulent within the meaning of the Uniform Fraudulent Conveyance Act (UFCA), 39 P.S. § 351–

§ 363.[6] Appellants were the primary beneficiaries of these transfers, and thus, have information of the circumstances and documentation regarding the transactions. By virtue of their position as the executors of the decedent's estate, appellants also may have knowledge of Mr. Israel's financial affairs during the relevant time-period prior to his death. The material sought to be discovered by appellee therefore has the potential to definitively determine the ultimate issues in this case, *i.e.*, whether the transfers were fraudulent.[7] *Compare Gottschall v. Jones & Laughlin Steel Corp., supra* (order which placed discovery material under seal had the potential to determine the ultimate issues of liability, or in the alternative, to disqualify the plaintiff from pursuing the actions was

**6.** The UFCA was repealed and re-enacted by the Act of December 3, 1993, P.L. 479, No. 70, § 1, *codified at* 12 Pa.C.S.A. § 5101–§ 5110. The UFCA was renamed the Uniform Fraudulent Transfer Act (UFTA). *See* the Act of December 3, 1993, P.L. 479, No. 70, § 1, *codified at* 12 Pa.C.S.A. § 5101(a).

**7.** Appellants dispute this element and suggest that some of the requested material is irrelevant to the main cause of action because an action under the UFCA/UFTA is barred by the applicable statute of limitations. We disagree with appellants' analysis. The statute of limitations and laches are affirmative defenses which must be raised in an appropriate pleading. *See* Pa.R.C.P., Rule 1030 (requiring all affirmative defenses, including the defenses of laches and statute of limitations to be pleaded in a responsive pleading under the heading "New Matter.") and Rule 1509(b), (providing that objections of laches may be raised by preliminary objection, answer or reply), 42 Pa.C.S.A. A party waives all affirmative defenses which he does not present by preliminary objection, answer or reply. Pa.R.C.P., Rule 1032 and 1509(b), 42 Pa.C.S.A. After reviewing the certified record, we are unable to find therein any presentation of the defenses of laches or the statute of limitation. Even if this matter has been properly plead, the determination of whether a UFCA/UFTA action is barred by either or both of these defenses has yet to be litigated in the lower court and is not properly before us at this stage of the proceedings. In any event, the *Cohen* test does not make the scope of discovery contingent upon the continued existence or viability of a particular cause of action. Instead, the test is whether the information sought to be discovered *has the potential* to determine the ultimate issues of liability. *See Gottschall v. Jones & Laughlin Steel Corp., supra; DER v. TETC,* and *Doe v. DPW, infra.* Because it would be premature for this court to ascertain whether the affirmative defenses of laches or the statute of limitations bars, let alone even applies, in the context of this particular case, we cannot definitively conclude that appellee's discovery request is irrelevant and unrelated to the ultimate issues to be decided.

held to directly relate to the main cause of action); *Hutchison v. Luddy (II)*, 414 Pa.Super. 138, 157, 606 A.2d 905, 914 (1992), *appeal discontinued*, 531 Pa. 640, 611 A.2d 712 (dissenting opinion by Johnson, J.), (discovery of material in church's secret archive relating to sexual misconduct of defendant-priest and other priests of the Altoona–Johnstown Diocese with male children was relevant to underlying claims against the defendants). *See also Commonwealth, Department of Environmental Resources v. Texas Eastern Transmission Corp.*, 130 Pa.Commw. 655, 657–658, 569 A.2d 382, 383–384 (1990) (hereinafter *"DER v. TETC"*) (discovery of documents from the DER had the potential to determine the ultimate issues in the case, and thus, were not separable and collateral); *Doe v. Commonwealth, Department of Public Welfare*, 105 Pa.Commw. 482, 486–487, 524 A.2d 1063, 1065 (1987) (hereinafter *"Doe v. DPW"*) (discovery of documents regarding the actions taken by the defendants had the potential to determine the ultimate issues of liability in a negligence action). *But see Hutchison v. Luddy (II)*, 414 Pa.Super. at 143–144, 606 A.2d at 907 (majority opinion) (denial of request for protective order regarding materials in secret church archive deemed collateral to the plaintiff's main tort action against the defendants).[8] We accordingly find that the first prong of the *Cohen* test has not been met.

**8.** We question the soundness and continued vitality of the *Hutchison (II)* court's determination that the order was separable and collateral. The majority reached its cursory conclusion without any attempt to relate the requested discovery material to the litigation. *Hutchison v. Luddy (II)*, 414 Pa.Super. at 143–144, 606 A.2d at 907. Instead, the majority relied upon a similar analysis contained in a prior appeal between the parties. *Id.*, 414 Pa.Super. at 143 n. 1, 606 A.2d at 907 n. 1 (citing *Hutchison v. Luddy (I)*, 398 Pa.Super. 505, 510–511, 581 A.2d 578, 581 (1990), in which this court found that an order denying a motion to seal the record was independent of the principal action, even though it was expressly acknowledged that the information sought might impact on the principal actions). However, the Supreme Court reversed the *Hutchison (I)* court's conclusion and held that the trial court's denial of the motion to seal the record was not final and appealable under *Pugar v. Greco, supra. See Hutchison v. Luddy (I)*, 527 Pa. 525, 594 A.2d 307 (1991). The *Hutchison (II)* majority's reasoning also overlooked the above-cited appellate decisions which unequivocally hold that an order is not separable and collateral from an action where it has the potential to determine the ultimate issues in the

Appellants likewise have not satisfied the second element as they have failed to identify any right involved which is too important to be denied review. In fact, appellants do not specifically address this requirement, but rely upon the reasoning of *Hutchison v. Luddy (II)*, *supra* (majority opinion) in support of their position that the order in this case is final and appealable pursuant to the collateral order doctrine. In *Hutchison (II)*, the defendant Roman Catholic Church claimed that the requested materials were privileged and confidential under Canon law. *Id.*, 414 Pa.Super. at 142, 144, 606 A.2d at 906, 907.

Unlike the *Hutchison (II)* defendants, appellants do not assert any type of statutory, constitutional or other privilege as a bar to discovery. Appellants instead suggest that the discovery order should be deemed "final and appealable" because they are not parties to this action in their individual capacities. Appellants refer us to *International Coal Mining Co. v. Pennsylvania Railroad Co. (No. 1)*, 214 Pa. 469, 470, 63 A. 880, 880 (1906) in support of this premise. Contrary to appellants' conclusion that *International Coal Mining* remains good law, however, our Supreme Court has apparently rejected this view. *See Pennsylvania Human Relations Commission*, 483 Pa. at 36–37, 394 A.2d at 526 (quashing appeal from an order enforcing a subpoena issued by an administrative agency against a non-party witness; in reaching this result, the Supreme Court expressly stated that the holding in *International Coal Mining* has been discarded); *In re: Petition of Specter*, 455 Pa. 518, 519–520, 317 A.2d 286, 287 (1974) (quashing appeal from an interlocutory order which denied a motion to quash a grand jury subpoena even though non-party witness averred that the subject matter of the proposed questioning was beyond the scope of the convening petition and charge to the investigative grand jury). *But see Steel v. Weisberg*, 347 Pa.Super. 106, 111, 500 A.2d 428, 431 (1985) (suggesting in dicta that a non-party witness could arguably appeal from an order directing the party to be deposed).

action. *See Gottschall v. Jones & Laughlin Steel Corp., DER v. TETC*, and *Doe v. DPW*, *supra*.

Notwithstanding appellants' attempt to distinguish their individual and executive capacities, we note that appellants' capacities are inextricably intertwined in light of their roles as executor/beneficiary of the decedent's estate and the fact that they were the recipients of the allegedly fraudulent transfers. Because of appellants' unique status and their participation in these proceedings as the executors, we are not persuaded that appellants, in their individual capacities, are non-parties for the purpose of rendering the discovery order final and appealable.[9] Since appellants have not presented any reason, privilege or right which is too important to be denied review, the second *Cohen* requirement has not been satisfied.[10]

The third and final element requires us to ascertain whether the claimed right will be irreparably lost if review is postponed until final judgment. This element has not been met. As previously explained, appellants have asserted no right or privilege other than their attempt to separate their executive and individual capacities. Thus, no right will be irreparably lost if review is postponed until final judgment.

9. Appellants' assert that they have now been made parties to this action in their individual capacities. *See* Appellants' Reply Brief at 6. This fact is outside the duly certified record submitted to this court and cannot be considered. *Dile v. Dile*, 284 Pa.Super. 459, 465 n. 5, 426 A.2d 137, 141 n. 5 (1981) (Superior Court is bound to consider only those facts which are in the certified record and may not consider those facts interjected in counsel's brief). In any event, this occurrence renders appellants' argument moot. As appellants, in their individual capacities, are now parties to this action any rights which they may have will not be irreparably lost and review of the discovery order can be postponed until the entry of a final order, judgment or decree.

10. Our conclusion is not inconsistent with our holding in *Commonwealth v. Miller*, 406 Pa.Super. 206, 593 A.2d 1308 (1991). *Miller* may be factually distinguished from the instant case in that the women's rape crisis center aggrieved by the trial court's discovery order asserted a statutorily created privilege which precluded disclosure of the requested materials without the victim's written consent. *Id.*, 406 Pa.Super. at 212–213, 593 A.2d at 1311. The victim whose records were sought also asserted a right to privacy and confidentiality in her relationship with the rape crisis center. *Id.* 406 Pa.Super. at 210, 593 A.2d at 1310. Appellants have asserted no type of privilege or right in this case. We also note that, unlike the circumstances presented here, the remaining prongs of the *Cohen* test were satisfied in *Miller*. *Id.*, 406 Pa.Super. at 210, 593 A.2d at 1309–1310.

█ Moreover, appellants have at their disposal other remedies for obtaining review of the discovery order prior to the entry of judgment, regardless of their capacity. An individual who is aggrieved by the entry of an order compelling discovery may either: (a) refuse to comply with the discovery order and litigate the propriety of the order in the event that contempt or similar proceedings are brought; or (b) seek permission to institute an interlocutory appeal. *See Pennsylvania Human Relations Commission,* 483 Pa. at 37, 394 A.2d at 526 and *In re: Petition of Specter,* 455 Pa. at 519, 317 A.2d at 287 (party must either comply with subpoena or refuse to comply and litigate the propriety of the subpoena in the event that contempt or similar proceedings are brought); *McManus v. Chubb Group of Insurance Companies,* 342 Pa.Super. at 408, 493 A.2d at 86 (this court lacks jurisdiction to review an order declaring a party in contempt unless sanctions are imposed); 42 Pa.C.S.A. § 702(b), and Pa.R.A.P., Rules 312 and 1301–1323, 42 Pa.C.S.A. (governing interlocutory appeals). Both alternatives provide an aggrieved person with a means of obtaining review prior to the entry of final judgment. Under these circumstances, we conclude that the third *Cohen* factor has not been met. Because none of the requirements of the collateral order doctrine have been satisfied, and because the lower court's order is otherwise interlocutory and unappealable, we quash this appeal.

Appeal quashed.