

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-9-1996

# Elliott v. Kiesewetter

Precedential or Non-Precedential:

Docket 95-3104,95-3105

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Elliott v. Kiesewetter" (1996). *1996 Decisions.* Paper 40.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/40

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

                    UNITED STATES COURT OF APPEALS
                        FOR THE THIRD CIRCUIT

                          _____

                    Nos. 95-3104 and 95-3105
                          _____


CONSTANCE K. ELLIOTT; PATRICIA J.
KIESEWETTER; LINTON A. ELLIOTT; CHARLES L.
ELLIOTT, individually and/or as a Minor, by
Constance K. Elliott, his Parent and
Guardian; JONATHAN B. ELLIOTT, a Minor by
Constance K. Elliott, the Parent and Guardian

                         vs.

WILLIAM B. KIESEWETTER, JR.

        WILLIAM B. KIESEWETTER, JR. and
        JAYNE H. KIESEWETTER*
        (*Pursuant to Rule 12(a), F.A.R.P.),

                         Appellants No. 95-3104.


                          _____


CONSTANCE K. ELLIOTT; PATRICIA J.
KIESEWETTER; LINTON A. ELLIOTT; CHARLES L.
ELLIOTT; JONATHAN B. ELLIOTT, Minors by
Constance K. Elliott, their parent and
guardian

                         vs.

WILLIAM B. KIESEWETTER, JR.
JAYNE H. KIESEWETTER

        WILLIAM B. KIESEWETTER, JR. and
        JAYNE H. KIESEWETTER

                         Appellants No. 95-3105.


                          _____


        APPEAL FROM THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil Nos. 93-cv-00753 and 94-cv-00576)

_____

ARGUED MARCH 4, 1996

BEFORE: MANSMANN, ALITO, LEWIS, Circuit Judges.

(Filed  October 9, 1996)

_____

Kenneth M. Argentieri (ARGUED)
Nicholas P. Vari
Kirkpatrick & Lockhart
1500 Oliver Building
Pittsburgh, PA  15222

        Attorneys for Appellant, William B. Kiesewetter, Jr.

Jan C. Swensen (ARGUED)              Jayne H. Kiesewetter
Swensen, Perer & Johnson             624 Pitcairn Place
Two PNC Plaza                        Pittsburh, PA 15232
Suite 2710
Pittsburgh, PA  15222

        Attorney for Appellant, Jayne H. Kiesewetter


Ronald L. Hicks, Jr. (ARGUED)
Meyer, Unkovic & Scott
1300 Oliver Building
Pittsburgh, PA  15222

        Attorney for Appellees

_____

OPINION OF THE COURT
_____


LEWIS, Circuit Judge.
                    I.
        This appeal involves a challenge to the district
court's asset freeze order arising out of certain litigation
pending in the district court between members of the Kiesewetter
family.  The asset freeze order bound Appellant William B.
Kiesewetter Jr. and his wife, Appellant Jayne H. Kiesewetter

(collectively, the "Kiesewetters").

We hold that the district court did not err in entering the asset freeze order without holding a hearing, and that it made adequate factual findings with respect to its freezing of William B. Kiesewetter Jr.'s assets. In addition, we will hold that the Freeze Order properly enjoined Jayne Kiesewetter from transferring or otherwise disposing of the assets she owned with William B. Kiesewetter, Jr.

We also hold that the district court properly determined that the Appellees, Constance K. Elliott, Patricia J. Kiesewetter, Linton A. Elliott, Charles L. Elliott, and Jonathan B. Elliott (collectively, the "Beneficiaries"), would suffer irreparable harm without the protection of an asset freeze and that the hardship to the Kiesewetters did not prevent entry of the order. We will reverse the district court's waiver of the Rule 65 bond requirement because it did not make any findings as to the Beneficiaries' financial ability (or inability) to post the bond. Finally, we will reject the Kiesewetters' arguments that the asset freeze order was too broad and that it violated their due process rights.

II.

A. The Parties and the Underlying Litigation

The parties to this appeal and the underlying litigation are all members of the same family. The Beneficiaries brought two actions against William B. Kiesewetter, Jr. The first action was a demand for an accounting of their family's assets and is premised on various claims against Mr. Kiesewetter, alleging breach of fiduciary duties, fraud, unjust enrichment and violations of the Uniform Gifts to Minors Act ("UGMA") (hereinafter the "Accounting Action"). A year after filing the Accounting Action, the Beneficiaries filed a second lawsuit alleging that Mr. Kiesewetter and his second wife, Appellant Jayne H. Kiesewetter, fraudulently conveyed Kiesewetter family assets from William B. Kiesewetter, Jr.'s name into the joint or individual name of Jayne H. Kiesewetter (hereinafter the "Fraudulent Conveyance Action") in order to protect the assets from a judgment in the Accounting Action.

The litigation between the Kiesewetter family members began shortly after the death in October 1992 of Grace J. Kiesewetter, the wife of the late Dr. William B. Kiesewetter ("Dr. Kiesewetter"). Dr. Kiesewetter had passed away years earlier. Constance K. Elliott, Patricia K. Elliott and William B. Kiesewetter, Jr. are the daughters and son of Dr. and Mrs. Kiesewetter. Linton, Charles and Jonathan Elliott are the sons of Appellee Constance Elliott and the only grandchildren of Dr. and Mrs. Kiesewetter.

The primary dispute between the Kiesewetter family members stems from the manner in which certain family assets, properties and accounts were handled and managed. The Beneficiaries allege that, prior to their deaths, Dr. and Mrs. Kiesewetter placed substantially all of their assets into the names of the Beneficiaries and William B. Kiesewetter, Jr. to avoid or lessen the estate tax liability upon their respective deaths. William B. Kiesewetter, Jr., a licensed attorney with a

masters degree in taxation, was Dr. and Mrs. Kiesewetter's natural choice as the person to manage these assets. The Beneficiaries allege that Mr. Kiesewetter agreed to manage the assets on behalf of himself and the Beneficiaries. According to the Beneficiaries, they discovered after Grace J. Kiesewetter's death that Mr. Kiesewetter had acquired their property rights in the family assets without their knowledge or consent.

In the Accounting Action, the Beneficiaries alleged that Mr. Kiesewetter's mismanagement and other fraudulent conduct resulted in the dissipation of the family assets that had been placed in their names and that Mr. Kiesewetter was liable to them for the value of their collective interests in those assets. The Beneficiaries sought an accounting of the family's financial affairs and of the UGMA accounts established for Linton A. Elliott, Charles L. Elliott and Jonathan B. Elliott. The Beneficiaries demanded over $5 million in compensatory damages plus punitive damages and other equitable relief.

On December 5, 1994, a jury returned a verdict by special interrogatories in the Accounting Action in which it determined, inter alia, that Mr. Kiesewetter had breached various fiduciary duties that he owed to the Beneficiaries. Evidence at trial revealed that the Beneficiaries had held property interests in numerous Kiesewetter family assets. These assets included life insurance proceeds, pension proceeds, property sale proceeds, trust funds, bonds, and various bank accounts.

At trial, the Beneficiaries established that their collective interests in these family assets had a total principal value of over $3.4 million. The evidence established that the Beneficiaries' interests in these assets were placed into accounts held only in Mr. Kiesewetter's name, and that Mr. Kiesewetter reported in excess of $1 million in interest and dividend income from these assets. In addition, the Beneficiaries introduced evidence suggesting that they may have an interest in other assets Mr. Kiesewetter acquired using a portion of their interests in the family assets.

On December 30, 1994, Mr. Kiesewetter moved for a new trial or alternatively for judgment notwithstanding the verdict. None of the bases for his motion pertained to the sufficiency of the trial evidence regarding the Beneficiaries' interests in the family assets or the principal value of those interests. In addition, Mr. Kiesewetter did not challenge the jury's findings of liability on the basis that the evidence was insufficient.

B.  The Asset Freeze

On December 13, 1994, the Beneficiaries moved the district court, pursuant to its inherent equitable powers and Rule 65, to freeze all of the Kiesewetter family assets held in the name of or on behalf of Mr. Kiesewetter, including those assets subject to the Fraudulent Conveyance Action. (A. 91-112). In support of their motion, the Beneficiaries relied on facts adduced at trial and the jury's verdict. In the motion, the Beneficiaries stated that the purpose of the freeze order was "to preserve the assets and properties in the possession, custody or control of [Mr. Kiesewetter] that will be necessary to satisfy the judgment and other equitable remedies ultimately to be

entered in [the Accounting Action] in order to make [Appellees] whole." (A. 99). Attached to the Beneficiaries' motion was a proposed asset freeze order, in which the Beneficiaries proposed a freeze on all assets held in the name of or on behalf of Mr. Kiesewetter, except for monthly payments of up to $2,000 for ordinary living expenses, including attorneys' fees. (A. 95-97).

After Mr. Kiesewetter and Jayne H. Kiesewetter filed separate responses in opposition to the Beneficiaries' request for an asset freeze, the district court held two telephone conferences with counsel to discuss the freeze order request. At the first conference, the district court advised counsel that, unless Mr. Kiesewetter voluntarily posted a bond in an amount sufficient to satisfy a judgment against him in the Accounting Action, it would enter an order granting the Beneficiaries' freeze order request. The district court then scheduled a second telephone conference, at which Mr. Kiesewetter was to advise the court whether he would voluntarily post a bond.

Prior to the second conference, the Beneficiaries submitted to the district court and all counsel a summary of the Beneficiaries' damages for purposes of determining the bond amount (S.A. 1-4). The summary, based upon the evidence at trial and the jury's punitive damage award, indicated that the Beneficiaries' total damages, with interest and capital appreciation, equalled in excess of $6 million. Neither Mr. Kiesewetter nor Jayne H. Kiesewetter submitted any materials to the district court prior to the second conference.

At the second conference, Mr. Kiesewetter's counsel stated that Mr. Kiesewetter was financially unable and personally unwilling to post a bond for several million dollars. The district court then ruled that it would impose a freeze on all assets held in the name or on behalf of Mr. Kiesewetter for a period of 30 days, during which time it would require Mr. Kiesewetter to post a bond of $4 million. The court also ruled that, if Mr. Kiesewetter did not file the requisite bond within 30 days, the asset freeze would remain in effect until final disposition of both lawsuits, during which time it would permit Mr. Kiesewetter to access funds only for ordinary and reasonable living expenses.

On February 1, 1995, after considering the Beneficiaries' proposed order and Mr. Kiesewetter's objections thereto, the district court entered a freeze order against Mr. Kiesewetter and Jayne H. Kiesewetter (the "Freeze Order"). The Freeze Order enjoined Mr. Kiesewetter and Jayne H. Kiesewetter from:

> . . . withdrawing, transferring, encumbering, disposing of and/or secreting away any monies, stocks, bonds, properties (real or personal) and/or other assets, located anywhere and held or opened in any capacity or name, other than payments for [Mr. Kiesewetter's] ordinary and reasonable basic living expenses not to exceed $2,500 per month, without the approval of the Court or of Plaintiffs' counsel.

(A. 163).  The Freeze Order also prohibited Jayne H. Kiesewetter from disposing of her assets without proving to the district court that the assets did not derive from Mr. Kiesewetter.

On February 3, 1995, Jayne H. Kiesewetter filed an emergency motion for relief from the Freeze Order.  In her motion, Jayne H. Kiesewetter alleged that she controlled two trusts and five bank accounts that provided her at least $13,000 in monthly income and were independently acquired by her.  Jayne H. Kiesewetter sought to have these assets released by the court from its Freeze Order.  In response, the district court held a telephone conference with counsel regarding the motion.  The court then entered an order exempting these particular assets from the Freeze Order.  This order, however, contained the proviso that Jayne H. Kiesewetter submit, within 21 days, a verification of the noncommingling of the independently acquired assets and of the existence of the trust agreements.  Jayne H. Kiesewetter never filed the verification.

Mr. Kiesewetter also filed a motion to modify the Freeze Order.  Mr. Kiesewetter sought an increase in the $2,500 monthly living expense cap to $9,112, as well as permission to pay his attorneys' fees out of the frozen funds.  Mr. Kiesewetter attached an affidavit to the motion containing a schedule of Mr. Kiesewetter's purported "ordinary and reasonable [monthly] financial obligations."  According to the schedule, Mr. Kiesewetter's monthly living expenses include $1,500 in air travel and rental cars, $1,288 in club dues and expenses, $650 in groceries and $405 in self storage units.  (A. 190-92).  The schedule also lists monthly expenses covering the joint obligations of Mr. Kiesewetter and Jayne H. Kiesewetter, including items such as $1,978/month in rent for two apartments in Pittsburgh (even though Mr. Kiesewetter and Jayne H. Kiesewetter are the registered owners of the Kiesewetter family home in Pittsburgh), and $1,017/month in lawn care maintenance for both their Pittsburgh home and their Florida condominium.

III.

The Kiesewetters argue that the district court erred by not holding an evidentiary hearing prior to its entry of the Freeze Order and by entering the Freeze Order without setting forth findings of facts and conclusions of law.

A.   Evidentiary Hearing

The district court entered the Freeze Order without a hearing, determining that:

> After considering such argument [in the telephone conferences with counsel] as well as the evidence presented at trial and by motion or response and the jury's December 5, 1994 verdict, the Court finds that an accounting is required in order to determine Plaintiffs' damages, that Plaintiffs are likely to become entitled to the encumbered funds upon the completion of the accounting, that Plaintiffs' damages are expected to be at least $4 million, and that Plaintiffs will suffer immediate and irreparable harm if no

order is issued. (A. 157). In making its findings, the district court determined that there were enough facts in the record to support its conclusions and that an evidentiary hearing was unwarranted. We review the district court's decision to issue the Freeze Order without holding an evidentiary hearing only for an abuse of discretion. Acierno v. New Castle County, 40 F.3d 645, 652 (3d Cir. 1994).

In determining whether the district court should have held an evidentiary hearing, we must focus on whether there were any issues of fact in dispute with respect to the Freeze Order. A district court cannot issue a preliminary injunction that depends upon the resolution of disputed issues of fact unless the court first holds an evidentiary hearing. Professional Plan Examiners of New Jersey, Inc. v. Lefante, 750 F.2d 282, 288 (3d Cir. 1984). We have recognized, however, that "a decision [to enter an order] may be based on affidavits and other documentary evidence if the facts are undisputed and the relevant factual issues are resolved." Bradley v. Pittsburgh Board of Education, 910 F.2d 1172, 1175-76 (3d Cir. 1990) (emphasis added).

The Kiesewetters argue that in order to resolve the Beneficiaries' request for the asset freeze, the district court was forced to "resolve disputed issues of fact which directly impacted upon the fundamental inquiry of whether Plaintiff-Appellees will suffer irreparable harm if no injunction is issued." Appellants' Br. 18. The Kiesewetters identified the following "factual issues" as being in dispute: (1) whether Mr. Kiesewetter was likely to improperly dissipate or conceal the assets that remained in his name; (2) whether Jayne H. Kiesewetter was likely to assist Mr. Kiesewetter in dissipating the assets; (3) whether the Beneficiaries are likely to recover a judgment in an amount that exceeds Mr. Kiesewetter's net worth. Id. at 18-19.

In refusing to hold an evidentiary hearing, the district court impliedly resolved the above "factual issues" against the Kiesewetters. The Kiesewetters offer little to suggest that to do so was an abuse of discretion. In addition, close examination reveals that the Kiesewetters' "factual issues" were either not in dispute given the facts in the record, or were not relevant to the district court's entry of the Freeze Order.

Prior to the district court's entry of the Freeze Order, the jury determined that the Beneficiaries were entitled to their share of the family assets and that Mr. Kiesewetter was liable for the dissipation of those assets. In addition, the jury determined that Mr. Kiesewetter had fraudulently obtained the Beneficiaries' interest in the family assets, that he had unjustly enriched himself at the Beneficiaries' expense and that his conduct was sufficiently outrageous to warrant the imposition of $500,000 in punitive damages. Thus, the Kiesewetters' first "factual issue" was not improperly ignored by the district court. It was hardly an abuse of discretion for the district court to conclude, based on Mr. Kiesewetter's prior course of conduct with respect to the family assets, that he was likely to dissipate the remaining assets if he was not restrained from doing so.

The second factual issue raised by the Kiesewetters, whether Jayne H. Kiesewetter was likely to assist Mr. Kiesewetter in dissipating the assets, is in dispute but does not preclude entry of the Freeze Order. The existence of this factual issue does not mandate a finding that the district court could not have entered, without a hearing, a freeze order enjoining Mr. Kiesewetter. There are facts in the record that indicate that there is a strong likelihood that Mr. Kiesewetter will, if he is not enjoined, transfer additional assets to Jayne H. Kiesewetter to avoid payment of a judgment in the Accounting Action. In the Fraudulent Conveyance Action, Mr. Kiesewetter admitted that he had transferred most, if not all, of the fraudulently obtained family assets to joint ownership with Jayne H. Kiesewetter. (A. 75-76). Further, in response to the Beneficiaries' motion for an asset freeze, Mr. Kiesewetter acknowledged that he was aware that, in Pennsylvania, his conveyance of the family assets to joint ownership with his wife, Jayne H. Kiesewetter, caused the assets to become tenants by entireties property. (A. 126). Mr. Kiesewetter was also aware that tenants by entireties property is protected under Pennsylvania law from any judgment which might be rendered against an individual spouse. (A. 126).

The third factual issue that the Kiesewetters claim the district court resolved against them was never in fact resolved by the district court in its entry of the Freeze Order. The district court's entry of the Freeze Order was not based on an evaluation of Mr. Kiesewetter's net worth. Mr. Kiesewetter refused to post the $4 million bond, perhaps leading the court to consider whether he would ultimately be able to satisfy a multi-million dollar judgment. A district court is clearly permitted to consider the likelihood that a defendant will be able to pay a judgment in determining whether to enter an asset freeze order. See Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 205 (3d Cir. 1990). Further, the Freeze Order was entered to preserve what remained of the family assets. The evidence at trial revealed that the total principal value of the family assets to which the Beneficiaries had an interest equalled over $3.4 million. Adding the jury's punitive damages award and a potential interest award, the district court set the $4 million bond amount, reasonably approximating the amount of the judgment that would ultimately be entered against Mr. Kiesewetter. The court made no finding with respect to whether this amount exceeded Mr. Kiesewetter's net worth.

As such, we conclude that the district court did not abuse its discretion in refusing to hold an evidentiary hearing prior to its entry of the Freeze Order enjoining Mr. Kiesewetter.

B.    Factual Findings -- Rule 52(a)

Rule 52(a) provides that "in granting or refusing interlocutory injunctions the court shall . . . set forth the findings of fact and conclusions of law which constitute grounds of its actions." Fed. R. Civ. P. 52(a). The Supreme Court has recognized the importance of requiring district courts to comply with Rule 52(a), stating that:

> It is of the highest importance to a proper
> review of the action of a court in granting

> or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) of the Rules of Civil Procedure. . . . [I]f appellants conceived themselves aggrieved by the action of the court upon motion for preliminary injunction, they were entitled to have explicit findings of fact upon which the conclusion of the court was based. Such findings are obviously necessary to the intelligent and orderly presentation and proper disposition of an appeal.

Mayo v. Lakeland Highlands Canning Co., Inc., 309 U.S. 310, 316–317 (1940). We have recognized the continuing import of the Court's fact finding requirements in Mayo. Bradley, 910 F.2d at 1178. We have held that a district court's order must be vacated if its findings "are inadequate to explain the basis for [its] ruling or to permit meaningful review" of its ruling. Professional Plan Examiners, 750 F.2d at 289.

The Kiesewetters argue that "Rule 52(a) has been flaunted" because the district court did not make adequate factual findings supporting its Freeze Order. Reply Br. 13. In entering the Freeze Order, the district court found that: (1) An accounting was required in order to determine the Beneficiaries' compensatory damages; (2) the Beneficiaries were likely to become entitled to the encumbered funds upon completion of the accounting; (3) the Beneficiaries' damages were expected to be at least $4 million; and (4) the Beneficiaries would suffer immediate and irreparable harm if no order was issued. (A. 157). The district court indicated that these findings were based upon the evidence presented both at trial and by motion or response, as well as on the jury's verdict.

The Kiesewetters have not identified what particular factual findings were not made by the district court, nor have they challenged the propriety of the district court's findings. Instead, they assert in conclusory fashion that "the District Court did not state its findings of fact in this case." Appellants' Br. 20. We construe this argument as an argument that the factual findings made by the district court failed to satisfy the requirements of Rule 52(a).

In determining whether a district court has made adequate findings supporting the issuance of an injunction, we have "looked to see whether the record provides a sufficient basis to ascertain the legal and factual grounds for the grant or denial of the injunction." Bradley, 910 F.2d at 1178–79. In cases in which a jury has issued a verdict, the jury's resolution of factual and legal issues in reaching the verdict can properly serve as a basis for the district court's issuance of an injunction. See, e.g., Educational Testing Services v. Katzman, 793 F.2d 533, 546 (3d Cir. 1986); Danny Kresky Enterprises Corp. v. Magid, 716 F.2d 206, 214–15 (3d Cir. 1983).

In this case, the district court's factual findings were sufficient to support the entry of the Freeze Order. The district court entered the Freeze Order only after the jury found that the Beneficiaries had a legitimate interest in the

Kiesewetter family assets and that Mr. Kiesewetter, in acquiring the Beneficiaries' interests in the assets, had breached his fiduciary duties, committed fraud, and unjustly enriched himself. Thus, the factual findings underlying the jury's verdict were properly used by the district court to support its entry of the Freeze Order. The facts supporting the jury's verdict, along with the facts found by the district court, clearly provide the legal and factual basis for the district court's issuance of the injunction and, as such, satisfied the requirements of Rule 52(a).

Accordingly, we reject the Kiesewetters' argument that the district court abused its discretion by not making adequate factual findings in support of its issuance of the Freeze Order.

## IV.

The district court's Freeze Order was directed in part at Jayne H. Kiesewetter, providing that:

> This freeze order does not affect any accounts that involve monies, properties or other assets that belong to Jayne H. Kiesewetter which she acquired independently from Mr. Kiesewetter. However, during the period of this freeze order, Jayne H. Kiesewetter shall not be permitted to make any withdrawals, transfers, encumbrances or other dispositions of such independently-acquired assets until she files with the Court and serves on Plaintiffs' counsel an accounting of such assets, which shall include the location, identity and origin/source of such asset.

Dist. Ct. Order. 3 (emphasis added).

The Kiesewetters argue that the district court erred in not making any findings with respect to the Beneficiaries' likelihood of success on the merits against Jayne H. Kiesewetter in the Fraudulent Conveyance Action or the Accounting Action. The Beneficiaries suggest that, because both Mr. Kiesewetter and Jayne H. Kiesewetter admitted that Mr. Kiesewetter transferred some of the family assets from Mr. Kiesewetter's ownership to Jayne H. Kiesewetter's ownership, Jayne H. Kiesewetter will ultimately be liable to the Beneficiaries.

In entering the Freeze Order, the district court concluded that "[p]laintiffs are likely to become entitled to the encumbered funds upon completion of the accounting, that Plaintiffs damages are expected to be at least $4 million, and that Plaintiffs will suffer immediate and irreparable harm if no order is issued." (A. 157). The "encumbered funds" that the district court referred to included assets that were jointly held in the names of William B. Kiesewetter and Jayne H. Kiesewetter. Thus, implicit in the district court's conclusion that the Plaintiffs will become entitled to the encumbered funds is a finding that the Beneficiaries will likely succeed on the merits in the Fraudulent Conveyance Action.

We conclude that the district court's finding is warranted. Under Pennsylvania law, "[w]hen a creditor

establishes that a grantor was in debt at the time of the conveyance, the burden shifts to the grantees to establish by clear and convincing evidence, either that the grantor was then solvent and not rendered insolvent by the conveyance, or that he received fair consideration for the conveyance." Coscia v. Hendrie, 629 A.2d 1024, 1026 (Pa. Super. 1993) (citation omitted); see also Stinner v. Stinner, 446 A.2d 651 (Pa. Super. 1982); United States v. Purcell, 798 F. Supp. 1102 (E.D. Pa. 1991), aff'd, 972 F.2d 1334 (3d Cir. 1992) (Table). As Plaintiffs point out, they established that William B. Kiesewetter unlawfully obtained the family assets, and he and Jayne H. Kiesewetter admit that William transferred most of these assets held in his sole name to his joint name with Jayne. There is ample evidence from which the district court could have found that William was in debt to plaintiffs at the time of the transfers. The burden of establishing otherwise, or of showing that the conveyances were supported by consideration, then shifted to Jayne. Jayne H. Kiesewetter offered no evidence as to William's continued solvency, and she presented no evidence to the district court suggesting that William's transfer of the family assets to her was supported by any consideration. Indeed, plaintiffs presented evidence during the trial in the accounting action that William's movement of the family's assets into his joint name with Jayne occurred after or about the time when plaintiffs had employed counsel to investigate his activities, and that William had a meeting with plaintiffs where he failed to reveal to them the true nature of his conduct. SeeApp. 107. For these reasons, we will not disturb the district court's finding that plaintiffs are likely to succeed on the merits of the fraudulent conveyance action.

V.

The Kiesewetters next argue that we should vacate the Freeze Order because the district court erred in finding that the Beneficiaries would suffer irreparable harm absent the Freeze Order and in not balancing the harm to be suffered by the Kiesewetters as a result of the Freeze Order.

A. Irreparable Harm

In Hoxworth, we recognized that a district court had the equitable power in certain situations to protect a future damages remedy. 903 F.2d at 197. We noted, however that this power is far from unlimited. Specifically, we stated that:

> Of course, just because a district court enjoys the power to protect a potential future damages remedy with a preliminary injunction does not mean that such an injunction is appropriate in a run-of-the-mill damages action. The traditional requirements for obtaining equitable relief must be met. These include, in this context, a showing that plaintiffs are likely to become entitled to the encumbered funds upon final judgment and a showing that without the preliminary injunction, plaintiffs will probably be unable to recover those funds.

Id.

The Kiesewetters focus on the second Hoxworth requirement, which is essentially an irreparable harm inquiry (i.e., if plaintiffs cannot recover the funds absent the injunction, they will suffer irreparable harm), arguing that "the irreparable harm element is established by a showing that, in the absence of an injunction, the party being enjoined is likely to wrongfully dissipate or conceal his [or her] assets." Appellants' Br. 25. The Beneficiaries counter by arguing that in Hoxworth, we determined that irreparable injury exists if a judgment will probably go unsatisfied absent an injunction. Appellees' Br. 37.

We need not rule, in this context, on the parties' arguments regarding Hoxworth to affirm the district court's entry of the Freeze Order in this case. That irreparable harm would occur absent an asset freeze is even more apparent where the very assets subject to a potential judgment will likely be dissipated without entry of the order. Thus, consistent with Hoxworth, we hold that a court may find that a party seeking an asset freeze to preserve a money judgment may show irreparable injury by showing that the freeze is necessary to prevent the consumption, dissipation or fraudulent conveyance of the assets that the party pursuing the asset freeze seeks to recover in the underlying litigation. The fact that the assets subject to the Freeze Order are primarily money assets does not preclude entry of a freeze order enjoining the use of those assets.

In fact, the money assets subject to the Freeze Order will likely provide the Beneficiaries relief which is equitable in nature. The equitable nature of the Beneficiaries' desired relief offers an additional compelling justification for affirming the district court's entry of the Freeze Order. The Beneficiaries seek to have returned to them property interests in assets that the jury determined were given to them but never received due to Mr. Kiesewetter's unlawful conduct. Mr. Kiesewetter admitted at trial that his sole source of income since 1983 has derived from his "management" of the family assets. Thus, the only way that the Beneficiaries will be able to be made whole is by recovering what is left of the family assets and preventing Mr. Kiesewetter from further dissipating the assets. Given Mr. Kiesewetter's history of fraud with respect to the family assets, it was not clear error for the district court to conclude that the Beneficiaries would likely suffer irreparable harm, as a result of Mr. Kiesewetter's further dissipation of the assets, without the Freeze Order.

We emphasize that this is an extraordinary case that demanded extraordinary measures by the district court to preserve what was left of the family assets. Given that a jury had already concluded that Mr. Kiesewetter has unconscionably lied to and stolen from his family members, the district court properly entered the Freeze Order against Mr. Kiesewetter and has properly placed a limit on the amount that Mr. Kiesewetter can spend on "ordinary and reasonable basic living expenses" during the course of the litigation.

B.  Balancing of Hardships

The Kiesewetters argue that the district court erred in not balancing the hardships to the respective parties before entering the Freeze Order.  In Hoxworth, we held that "[o]f course a preliminary injunction causing serious injury to defendants can be justified if it inflicts no more harm than reasonably necessary to prevent plaintiffs who are likely to prevail on the merits from suffering an irreparable injury."  903 F.2d at 207.

The Kiesewetters claim that Mr. Kiesewetter "is suffering tremendous hardship" because he is "unable to meet his monthly obligations or pay his attorneys . . . ."  Appellants' Br. 28.  These obligations are detailed in his motion to increase his monthly allowance, which is currently before the district court.  As we noted earlier, these obligations include $1,500 per month in air travel and rental car expenses, $1,300 per month in club dues and expenses, $405 in self-storage unit rental costs, and approximately $1,000 in lawn care and maintenance expenses for two residences in Pittsburgh and Florida.  In addition, Mr. Kiesewetter's obligations include rent payments on two apartments in Pittsburgh approximating $2,000, despite the fact that he and Jayne H. Kiesewetter are the registered owners of a home in Pittsburgh.  Finally, the Kiesewetters, in their hardship discussion, fail to mention that Jayne H. Kiesewetter (Mr. Kiesewetter's wife) receives at least $13,000 a month from assets not effected by the Freeze Order.

We cannot conclude that the Freeze Order, which may prevent Mr. Kiesewetter from covering the above living expenses, constitutes a hardship that outweighs the potential harm faced by the Beneficiaries, who have already lost a considerable portion of their collective interests in the family assets due to Mr. Kiesewetter's blatant fraud.  The inability to spend over $6,000 a month on primarily luxury expenses does not strike us as a hardship.  We are, however, unwilling to conduct our own analysis of whether Mr. Kiesewetter's claim that he is harmed by not being able to meet his monthly obligations is valid.  The district court presumably is conducting such an analysis in its consideration of Mr. Kiesewetter's motion to increase his monthly amount.  As such, we will not vacate the Freeze Order on the grounds that the district court failed to balance the hardship to the parties involved.

## VI.

The district court, in its Freeze Order, waived the requirement that the Beneficiaries post a security bond.  Specifically, the court held:

> The posting of security pursuant to
> Fed.R.Civ.Proc. No. 65(c) is hereby waived in
> light of the equitable and substantial nature
> of Plaintiffs' claims against Mr.
> Kiesewetter, the jury's December 5, 1994
> verdict finding against him with respect to
> all such claims, and the lack of proof by Mr.
> Kiesewetter as to any hardship on him as a
> result of this freeze order.

Dist. Ct. Order 5.

The Kiesewetters argue that, because of the financial harm that Mr. Kiesewetter suffered as a result of the Freeze Order, the district court's waiver of the requirement that the Beneficiaries post a security bond was error. Rule 65(c) of the Federal Rules of Civil Procedure provides in pertinent part that:

(c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Fed.R.Civ.P. 56(c).

We have strictly interpreted the bond requirement of Rule 65(c) and have recognized that such a bond "provides a fund to use to compensate incorrectly enjoined defendants." Hoxworth, 903 F.2d at 210 (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 805-06 n.9 (3d Cir. 1989)). In Hoxworth, we noted that, "[w]hile there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory." Id.

Notwithstanding our strict reading of Rule 65(c), we have indicated that there may be instances in which a strict reading of the rule is not appropriate. In Temple University v. White, we explicitly recognized an exception to the Rule 65(c) bond requirement. 941 F.2d 201, 219 (3d Cir. 1991). Relying on an approach articulated by the First Circuit, in Temple University we determined that, "at least in noncommercial cases, the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant." Id. (quoting Crowley v. Local No. 82, Furniture & Piano, 679 F.2d 978 (1st Cir. 1982)). Thus, the Temple University exception involves a balance of the equities of the potential hardships that each party would suffer as a result of a preliminary injunction. Where the balance of these equities weighs overwhelmingly in favor of the party seeking the injunction, a district court has the discretion to waive the Rule 65(c) bond requirement.

In this case, the district court made no findings regarding the Beneficiaries' financial ability to post the bond. The district court based its waiver on "the equitable and substantial nature of Plaintiffs' claims against Mr. Kiesewetter, the jury's December 5, 1994 verdict finding against him with respect to all such claims, and the lack of proof by Mr. Kiesewetter as to any hardship on him as a result of this freeze order." The district court's failure to make findings regarding Beneficiaries' potential financial hardship suggests that it did not adequately perform the balancing of equities required to find a Temple University exception to the Rule 65(c) bond requirement.

Thus, we will reverse the district court's waiver of the security bond and remand the case so that the district court can determine whether a balance of the potential hardships to

both parties weighs in favor of the Beneficiaries.  See Temple University, 941 F.2d at 220 n.28 (concluding that the proper remedy of a district court error in waiving the Rule 65(c) bond requirement necessitates a remand for reconsideration).

In so holding, we make no judgment as to whether the actual waiver was appropriate.  We reverse only on the basis that the district court failed to make findings regarding the financial hardships that a bond requirement would impose upon the Beneficiaries.  We have consistently determined that strict adherence to the requirements of Rule 65(c) is necessary to combat rash, baseless applications for preliminary injunctions.  As such, we must ensure that the exception we have set forth in Temple University remains a narrow exception.  Because departure from the bond requirement is rare, we hold that a district court must make specific findings, in granting a Temple Universityexception, regarding the relative hardships to each party.

## VII.

The Kiesewetters restate their arguments with regard to the district court's refusal to hold an evidentiary hearing prior to entry of the Freeze Order and argue that the refusal amounted to an unconstitutional denial of their due process rights.  The Kiesewetters remind us that "[f]undamental concepts of due process require that a person may not be deprived of his property without first being afforded the opportunity to be heard."  Appellants' Br. 32, citing Simmerman v. Corino, 27 F.2d 58, 64 (3d Cir. 1994).  The Kiesewetters suggest that they were not permitted to address several significant factual issues prior to issuance of the injunction.

An individual's due process right to an opportunity to be heard does not ensure a hearing in all contexts.  To so require would grind judicial and administrative gears to a screeching halt.  Thus, an individual's due process right to an opportunity to be heard can be preserved by courts or administrative bodies in many different ways.  The constitutional requirements of due process are not technical, nor is any particular form of procedure always necessary to provide due process.  Mitchell v. W.T. Grant Co., 416 U.S. 600, 609 (1974).

We are convinced that the Kiesewetters had several opportunities to be heard, and as such did not suffer a denial of their due process rights.  The Kiesewetters had many opportunities to respond both in writing and orally to the district court before its entry of the Freeze Order.  In fact, both William B. Kiesewetter, Jr. and Jayne H. Kiesewetter submitted written responses after the Beneficiaries filed their request for an asset freeze.  In addition, the Kiesewetters' counsel were present during the conferences held on January 20 and 25, 1995, and both parties had the opportunity to file objections to the proposed orders prior to the district court's final entry of the Freeze Order.  Finally, both Mr. Kiesewetter and Jayne H. Kiesewetter have filed requests to modify the Freeze Order.  In fact, Jayne H. Kiesewetter has already requested and received relief, based on her due process rights, from the district court with respect to assets that she independently acquired.  (A. 170).

Clearly, the Kiesewetters had ample opportunity to challenge the district court's entry of the Freeze Order.  As such, we reject the Kiesewetters' argument that the district court deprived them of their due process rights.

Finally, the Kiesewetters argue that the relief provided by the Freeze Order "goes well beyond the proper purpose of preserving the status quo."  Appellants' Br. 34.  We have recognized that an injunction should be designed to preserve the status quo and should not be punitive in nature.  CFTC v. American Metals Exchange Corp., 991 F.2d 71, 79 (3d Cir. 1993).

The Freeze Order in this case does no more than preserve the Kiesewetter family assets from further dissipation by the Kiesewetters.  It merely attempts to ensure that the Beneficiaries receive some legal and equitable relief once the accounting is completed.  This is precisely what an asset freeze should accomplish.  Id. at 79.  As stated before, because Mr. Kiesewetter has a motion pending before the district court with respect to whether the $2,500 limit on his monthly spending should be increased, we need not address in this appeal the Kiesewetters' argument that the Freeze Order's restriction on Mr. Kiesewetter's ability to meet his financial obligations impermissibly amounts to punishment, rather than preservation of the status quo.  We find that the district court's Freeze Order, including the $2,500 spending limit, did nothing more than attempt to preserve the status quo and was supported by facts in the record.

## VIII.

We hold that the district court properly concluded that the Beneficiaries would suffer irreparable harm without the protection of the Freeze Order and that the potential hardship to the Kiesewetters did not preclude entry of the order.  Accordingly, we will affirm district court's entry of the Freeze Order.  Finally, we hold that the district court's waiver of the Rule 65 bond requirement was error because it did not make findings as to the Beneficiaries' financial ability (or inability) to post the bond.  We will thus reverse the district court's order in this regard and remand for reconsideration.

_____