780 A.2d 649

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**William TILLEY, Appellee.**

Supreme Court of Pennsylvania.

Submitted Dec. 22, 2000.

Decided Sept. 26, 2001.

Hugh Burns, for Commonwealth of Pa.

Robert Brett Dunham, Ellen Berkowitz, Christina Allison Swarns, for William Tilley.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

NIGRO, Justice.

At issue in this appeal is whether the PCRA[1] court erred in ordering the Commonwealth to produce all data in its custody, including the prosecuting attorney's notes, related to the racial composition of the jury in Appellee William Tilley's murder trial. For the reasons that follow, we reverse.

Appellee was convicted of first-degree murder and sentenced to death in 1987.[2] In 1996, Appellee filed a *pro se* PCRA petition, which was amended by court-appointed counsel. One of the claims Appellee raised in his amended PCRA petition was that the Commonwealth improperly struck potential jurors at trial in a racially discriminatory manner in violation of *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), and *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[3] Appellee filed a discovery motion seeking, *inter alia*, "All data in the custody of the District Attorney's Office and/or Court of Common Pleas regarding the races of the member of [Appellee's] jury panels,

1. Post–Conviction Relief Act, 42 Pa.C.S. § 9541, *et seq.*

2. Appellee's judgment of sentence was affirmed by this Court on direct appeal in *Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575 (1991).

3. Appellee also raised numerous other claims that are not at issue in this appeal.

and notes relating to jury selection in this case[.]" (Appellee's Renewed Motion for Discovery, 5/14/99 ¶ 9.) The Commonwealth objected on the grounds that Appellee had not established good cause for such discovery and that the information was protected by the attorney work-product privilege. *See* Pa.R.Crim.P. 1502(E)(2), *recodified as* Pa.R.Crim.P. 902(E)(2)(April 1, 2001); Pa.R.Crim.P. 305(G), *recodified as* Pa.R.Crim.P. 573(G)(April 1, 2001). The PCRA court granted Appellee's discovery request and ordered the Commonwealth to produce the requested information.

The Commonwealth requested the PCRA court to certify its interlocutory order for appeal pursuant to 42 Pa.C.S. § 702(b), but the court refused to do so. The Commonwealth then filed a Notice of Appeal with this Court,[4] contending that the Court may exercise jurisdiction to review the merits of this case pursuant to a petition for review.

An appeal may be taken from an interlocutory order pursuant to a petition for permission to appeal or petition for review if all of the following elements are satisfied: 1) the order involves a controlling question of law; 2) there is a substantial ground for difference of opinion regarding the question of law; and 3) an immediate appeal would materially advance the ultimate termination of the matter. *See* Pa. R.A.P. 312; *Commonwealth v. Boyle*, 516 Pa. 105, 532 A.2d 306 (1987). Generally, the lower court must certify that the three prongs are satisfied, and the appellate court then decides whether to accept appellate review. *Boyle*, 532 A.2d at 308. However, if the lower court refuses to certify the matter for appeal, a petition for review may be filed in the appellate court that would have jurisdiction if a final order was entered in the case. *Id.* If the appellate court determines that the lower court abused its discretion in not certifying the matter for appeal, the appellate court may then proceed to address the merits of the appeal. *Id.; see also* Note to Pa.R.A.P. 1311 (describing procedure for petition for review).

4. The Commonwealth filed its Notice of Appeal with this Court since we would have jurisdiction over any final order in this capital case. *See* 42 Pa.C.S. §§ 722(4), 9711(h).

■ Applying these principles to the instant case, we conclude that the PCRA court abused its discretion in not certifying its discovery order for appeal. The order clearly involves a controlling question of law—whether Appellee is entitled to the Commonwealth's records, including potentially privileged material, regarding jury selection in Appellee's murder trial. Moreover, as evidenced by the respective arguments of the parties and the lack of Pennsylvania case law on this issue, there is a substantial ground for a difference of opinion regarding this issue. Finally, appellate resolution of this matter will materially advance the resolution of Appellee's numerous PCRA claims.[5] Accordingly, we accept jurisdiction of this appeal.[6]

Pursuant to Rule of Criminal Procedure 1502(E)(2), discovery in a first counseled PCRA petition in a death penalty case shall not be permitted at any stage of the proceedings except by leave of the court upon a showing of "good cause." Pa. R.Crim.P. 1502(E)(2). In the instant case, the Commonwealth contends that the PCRA court's discovery order is in error since Appellee cannot show the good cause required for discovery because, according to the Commonwealth, Appellee is not entitled to raise a *Batson/Powers* claim. We agree.

At the time of Appellee's trial in 1987, the existing case law did not recognize a claim by a white defendant, such as Appellee, that the Commonwealth improperly struck black potential jurors based upon race. Not until 1991, when *Powers* was decided, was such a claim cognizable. Accordingly, in order for Appellee's claim that the Commonwealth improperly struck black potential jurors based upon race to be cognizable, *Powers* must apply to his case.

**5.** All of Appellee's PCRA claims are on hold pending resolution of this appeal.

**6.** The Commonwealth also contends that the Court should exercise jurisdiction pursuant to either the collateral order exception, *see* Pa. R.A.P. 313, or King's Bench powers, *see* 42 Pa.C.S. § 726. However, in light of our exercise of jurisdiction pursuant to a petition for review, we need not address these contentions.

 Appellee contends that *Powers* applies retroactively to his case because the decision was handed down while Appellee's direct appeal was pending before this Court.[7] Case law is clear, however, that in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at "all stages of adjudication up to and including the direct appeal." *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146, 148 (1983). Thus, in order for Appellee to have been entitled to retroactive application of *Powers* on his direct appeal, he had to have challenged the Commonwealth's use of peremptory challenges at trial and again on appeal. Appellee, however, did not do so.

 In order to overcome his failure to raise the issue on direct appeal, Appellee asserts that appellate counsel was ineffective for not raising the *Powers* claim on direct appeal once *Powers* was decided. In order to establish a claim of ineffectiveness, Appellee must show that: 1) the underlying argument has merit; 2) counsel had no reasonable strategic basis for his action or inaction; and 3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Scott*, 561 Pa. 617, 752 A.2d 871, 877 (2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 1419, 149 L.Ed.2d 360 (2001). Counsel is presumed to have been effective and the defendant has the burden of proving otherwise. *Id.*

 Here, Appellee's claim that appellate counsel was ineffective lacks merit. Any claim by appellate counsel that *Powers* applied to Appellee's case would have had to have been framed as one of trial counsel's ineffectiveness for not challenging the Commonwealth's use of peremptory challenges to strike black jurors.[8] At the time of Appellee's trial, however, the law did not recognize such a claim by a white defendant. Thus, any ineffectiveness claim would necessarily have failed since counsel cannot be ineffective for failing to predict

7. Appellee's direct appeal was argued on December 3, 1990, *Powers* was decided on April 1, 1991, and Appellee's direct appeal was decided on July 18, 1991.

8. Appellee had a different counsel on direct appeal than at trial.

changes in the law. *Commonwealth v. Fowler,* 550 Pa. 152, 703 A.2d 1027, 1029 (1997).[9]

 Appellee relies upon the relaxed waiver rule applicable to capital direct appeals in an attempt to make *Powers* applicable to his case. In death penalty appeals, this Court has generally relaxed its waiver rules as to any claim raised on direct appeal for which the record permits review. *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 700 (1998). Here, Appellee claims that his appellate counsel was ineffective because, according to Appellee, had counsel raised *Powers* to this Court on direct appeal, the Court would have examined the issue pursuant to the relaxed waiver rule, even though such a claim had never been raised at trial or in post-trial motions. This claim fails. If Appellee's argument were accepted, a PCRA petitioner could conceivably receive retroactive application of any new law that came out while his capital case was on direct appeal—even if the issue had never been raised to the trial court or on direct appeal—merely by claiming that this Court would have reviewed the issue pursuant to the relaxed waiver rule if appellate counsel had raised it.

The practical effect of Appellee's argument is that appellate counsel, in order not to be ineffective, would have to raise to this Court any new rule of law decided during the pendency of the appeal-even if there was no reason to believe that the rule of law was relevant to the case. In the instant case, for example, there was no evidence of record to support a *Batson/Powers* claim at the time Appellee filed his direct appeal

9. In addition, a claim that counsel was ineffective must be made at the earliest stage at which the defendant is no longer represented by counsel who was allegedly ineffective. *Commonwealth v. Chmiel,* 536 Pa. 244, 639 A.2d 9, 12 (1994). Here, Appellee represented himself *pro se* at a post-trial ineffectiveness evidentiary hearing. Thus, Appellee had to raise trial counsel's ineffectiveness at that hearing in order to preserve the claim. Appellee, however, did not do so. Thus, any claim that trial counsel was ineffective would have been waived because Appellee cannot claim his own ineffectiveness for not arguing trial counsel's alleged ineffectiveness. *See Commonwealth v. Auker,* 545 Pa. 521, 681 A.2d 1305, 1319 (1996)(a defendant may not claim his own ineffectiveness).

because trial counsel had no reason to raise such a claim at the time of trial, which was before *Powers* was handed down.[10] Such a result runs counter to the well-established principle that counsel cannot be held ineffective for failing to raise issues that are not relevant or that counsel had no reasonable basis to believe were relevant. *See Commonwealth v. Bolden*, 562 Pa. 94, 753 A.2d 793 (2000)(counsel not ineffective for failing to call witnesses if counsel was neither informed of their existence nor should have known of their existence); *Commonwealth v. Rollins*, 558 Pa. 532, 738 A.2d 435 (1999)(counsel not ineffective for failing to produce mitigating evidence related to an alleged mental infirmity where there is no indication that counsel had any reason to know that the defendant might have a mental problem).

In addition, because *Powers* was decided after Appellee's direct appeal was submitted, appellate counsel would have had to petition the Court to file a post-submission communication pursuant to Pa.R.A.P. 2501.[11] Thus, contrary to Appellee's assertion, even if counsel sought to raise *Powers* on direct appeal, there is no guarantee that this Court would have allowed counsel to do so—especially since there was no evidence that *Powers* was relevant to Appellee's case.

Furthermore, Appellee is, in effect, seeking to apply the relaxed waiver rule to PCRA capital cases, if only indirectly. However, this Court held in *Albrecht* that the relaxed waiver doctrine does not apply to PCRA capital cases. *See Albrecht*, 720 A.2d at 700. In *Albrecht*, we noted that the "ever-widening application of the [relaxed waiver] doctrine has, in effect, virtually eliminated any semblance of finality in capital cases, and frustrated the efficient use of the resources of this

10. Appellee does not allege that appellate counsel had any reason to believe that the Commonwealth improperly used its peremptory challenges based upon race.

11. Rule 2501(a) provides:
 After the argument of a case has been concluded or the case has been submitted, no brief, memorandum or letter relating to the case shall be presented or submitted, either directly or indirectly, to the court or any judge thereof, except upon application or when expressly allowed at bar at the time of the argument.
 Pa.R.A.P. 2501(a).

court." *Id.* Appellee's argument in the instant case contravenes *Albrecht* by opening up for collateral review a plethora of otherwise waived issues.

Based on the above, we agree with the Commonwealth that Appellee is not entitled to assert a *Batson/Powers* claim and, therefore, that he has not shown the necessary "good cause" required for discovery related to this claim. The order of the PCRA court is reversed and jurisdiction is relinquished.