859 A.2d 1270

COMMONWEALTH of Pennsylvania, Appellant

v.

**James DENNIS, Appellee.**

Supreme Court of Pennsylvania.

Resubmitted Sept. 27, 2004.

Decided Oct. 21, 2004.

Hugh J. Burns, Philadelphia, for Com. of PA., appellant.

Daniel Silverman, Philadelphia, Kathleen Behan, Pro Hac Vice, Ryan David Guilds, Pro Hac Vice, Washington, DC, for James Dennis, appellee.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice NEWMAN.

The Commonwealth of Pennsylvania appeals from an Order of the Court of Common Pleas of Philadelphia County (PCRA court) directing the Commonwealth to provide to James Dennis (Dennis) the *voir dire* notes of the prosecutor from the 1992 trial of Dennis. For the reasons discussed herein, we reverse the Order of the PCRA court and remand the matter to that court to consider the remainder of Dennis' Post-Conviction Relief Act (PCRA)[1] Petition.

## FACTS AND PROCEDURAL HISTORY[2]

At approximately 1:50 p.m. on October 22, 1991, seventeen-year-old Chedell Williams (Williams) and her friend, Zahra Howard (Howard), were climbing the steps to enter the Fern Rock SEPTA station at Tenth and Nedro Streets in Philadelphia when Dennis and another man approached them. The men blocked the girls' path and Dennis demanded that Williams give him her earrings. The girls turned and ran. Dennis followed Williams and grabbed her in the street. He ripped the earrings from Williams' ears, drew a .32 caliber handgun, and shot her in the neck, killing her.

Three witnesses had protracted and unobstructed views of Dennis during and after the shooting: (1) Howard observed the shooting from a nearby fruit vendor's stand; (2) Thomas Bertha (Bertha), a stone mason who was working on a nearby building, heard the gunshot and saw Dennis flee the scene;

1. 42 Pa.C.S. §§ 9541, *et seq.*

2. The facts recited herein are recapitulated in large part from the July 22, 1998 Opinion of our Court, authored by this Justice, on direct appeal of Dennis' first-degree murder conviction. *Commonwealth v. Dennis*, 552 Pa. 331, 715 A.2d 404 (1998) (*Dennis I*).

and (3) James Cameron (Cameron), a SEPTA cashier, observed the shooting from approximately eight feet away. Each of the three witnesses positively identified Dennis as the perpetrator from a photo array, at a lineup, and again at trial.

At the ensuing jury trial, the Commonwealth presented the testimony of the three eyewitnesses, as well as evidence that Dennis had a gun of the type used in the murder and clothing resembling that worn by the perpetrator. Dennis argued that the eyewitnesses had misidentified him, and claimed that he was on a bus to the Abbottsford Homes at the time of the murder. The jury returned verdicts of guilty on charges of first-degree murder, robbery, conspiracy, a violation of the Uniform Firearms Act, 18 Pa.C.S. §§ 6101, *et seq.*, and possession of an instrument of crime.

The Commonwealth sought the death penalty on the basis of two aggravating circumstances: (1) that Dennis committed a killing while in the perpetration of a felony;[3] and (2) that, in the commission of the offense, Dennis knowingly created a grave risk of death to another person in addition to Williams.[4] Defense counsel raised three mitigating factors: (1) that Dennis had no significant history of prior criminal convictions;[5] (2) Dennis' age at the time of the crime (twenty-one);[6] and (3) the general mitigating factor of his character and record (the catchall mitigator).[7] The jury found the existence of one aggravating circumstance, namely that Dennis committed the murder while in the perpetration of a felony, and one mitigating circumstance, specifically that Dennis had no significant history of prior criminal convictions. The jury determined that the aggravating circumstance outweighed the mitigating circumstance and, accordingly, the trial court sentenced Dennis to death. Dennis filed Post–Verdict Motions, which the trial court denied, and then appealed to this Court.

3. 42 Pa.C.S. § 9711(d)(6).

4. 42 Pa.C.S. § 9711(d)(7).

5. 42 Pa.C.S. § 9711(e)(1).

6. 42 Pa.C.S. § 9711(e)(4).

7. 42 Pa.C.S. § 9711(e)(8).

On direct appeal, we affirmed the convictions and death sentence imposed on Dennis. *Dennis I.* We rejected each of Dennis' numerous claims, including a contention that the prosecutor, Roger King, Esq. (King), improperly used his peremptory challenges in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that trial counsel for Dennis was ineffective for failing to raise that issue before the trial court.[8] Messrs. Chief Justice Emeritus Flaherty and Zappala and Mr. Justice Saylor dissented on the ground that the prosecutor committed misconduct during his closing argument in the guilt phase and would have remanded the matter for a new trial. Of relevance to the case *sub judice*, the dissenting justices did not comment on the *Batson* claim.

On December 1, 2000, Dennis filed his first counseled Petition pursuant to the PCRA. In his Petition, Dennis claimed, *inter alia*, that he should receive a new trial because King discriminated against members of the *venire* pool on the basis of race. On December 12, 2000, Dennis filed a Motion for Discovery, pursuant to Pennsylvania Rule of Criminal Procedure 902(E)(2) seeking the jury selection notes of King.[9] Following briefing and oral argument, the PCRA court granted the Motion to Compel Discovery of King's *voir dire* notes (Discovery Order). On June 28, 2001, the Commonwealth sought reconsideration of the Discovery Order and also filed a request for certification of an interlocutory appeal. The PCRA court granted reconsideration, thereby vacating the Discovery Order. However, after further briefing and argument, on July 10, 2001, the PCRA court reinstated the Discovery Order.

**8.** In *Batson*, the United States Supreme Court determined that exercising peremptory challenges to strike African–American potential jurors from the jury empaneled to determine the guilt of an African–American defendant violated the Equal Protection Clause of the United States Constitution.

**9.** Pennsylvania Rule of Criminal Procedure 902(E)(2) provides that, "[o]n the first counseled petition in a death penalty case, no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause."

The Commonwealth filed a direct appeal to this Court, contending that the PCRA court had no authority to order discovery where Dennis made no showing of good cause and pleaded no basis for overriding the prosecutor's work-product privilege. The Commonwealth based its assertion of jurisdiction on 42 Pa.C.S. § 9546(d), which provides in relevant part that "[a]n order under this subchapter granting the petitioner final relief in a case in which the death penalty has been imposed shall be directly appealable by the Commonwealth to the Supreme Court pursuant to its rules[,]" and 42 Pa.C.S. 702(a), which states that "[a]n appeal authorized by law from an interlocutory order in a matter shall be taken to the appellate court having jurisdiction of final orders in such matter." Because this Court has jurisdiction over appeals from final orders in PCRA capital cases, the Commonwealth averred that we also have jurisdiction over interlocutory orders in PCRA capital cases.

As bases for exercising subject-matter jurisdiction, the Commonwealth argued that this Court should treat its appeal as a Petition for Review (requiring permission of the appellate court), as an appealable collateral order, or, alternatively, assume plenary jurisdiction pursuant to our Kings Bench powers articulated in 42 Pa.C.S. 726.[10] By Order dated March 5, 2003, we granted oral argument, limited to the following issue:

> Whether this Court may treat the present appeal as a Petition for Review pursuant to Pennsylvania Rule of Appellate Procedure 1503 or treat the Discovery Order as an appealable collateral order pursuant to Pennsylvania Rule of Appellate Procedure 313 and thus exercise jurisdiction over the matter?

*Commonwealth v. Dennis*, 31 EAP 2001 (Pa. March 5, 2003) (per curiam) (*Dennis II*). Oral argument proceeded on April

**10.** "Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or district justice of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done." 42 Pa.C.S. 726.

7, 2003, after which we entered an Order directing the PCRA court to prepare an Opinion in light of our decision in *Commonwealth v. Tilley*, 566 Pa. 312, 780 A.2d 649 (2001). We retained jurisdiction. *Commonwealth v. Dennis*, 31 EAP 2001 (Pa. April 25, 2003) (per curiam) (*Dennis III*).

## DISCUSSION

In *Tilley*, the PCRA court, per the same judge as in the present matter, entered an Order substantially the same as the Discovery Order entered in the case *sub judice*. The Commonwealth objected to the Order for the same reasons as presently, specifically that Tilley had not established good cause for the discovery and that the information was protected by the work-product privilege of the prosecutor. In *Tilley*, the Commonwealth asked the PCRA court to certify the interlocutory order for appeal pursuant to 42 Pa.C.S. § 702(b), which provides:

> When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

The PCRA court refused certification, prompting the Commonwealth to file a Notice of Appeal to this Court, requesting that we accept jurisdiction to review the merits of the matter as a Petition for Review.

An appeal from an interlocutory order will be permitted only if: "(1) the order involves a controlling question of law; (2) there is a substantial ground for difference of opinion regarding the question of law; and (3) an immediate appeal would materially advance the ultimate termination of the matter." *Tilley*, 780 A.2d at 651; 42 Pa.C.S. § 702(b). "Generally, the lower court must certify that the three prongs are

satisfied, and the appellate court then decides whether to accept appellate review." *Tilley*, 780 A.2d at 651. In *Commonwealth v. Boyle*, 516 Pa. 105, 532 A.2d 306 (1987), we explained that "where the trial court refuses to certify an interlocutory order [for appeal], the accepted procedure for requesting appellate review of an uncertified, interlocutory order is by the filing of a Petition for Review, directed to the appellate court which would have jurisdiction if a final order were entered in the matter." *Id.* at 308 (footnote omitted). "The purpose of a Petition for Review in such cases is to test the discretion of the trial court in refusing to certify its order for purposes of appeal." *Id. See also* Note to Pennsylvania Rule of Appellate Procedure 1311 ("Where the ... lower court refuses to [certify the interlocutory order for appeal], a petition for review under Chapter 15 of the unappealable order of denial is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal"). If the appellate court grants review, the appeal will proceed on its substantive merits.

In *Tilley*, we held that the PCRA court improperly refused to certify its discovery order for appeal to this Court because: (1) Tilley's entitlement to the Commonwealth's records regarding jury selection involved a controlling question of law; (2) the lack of case law on the issue demonstrated a "substantial ground for a difference of opinion[;]" and (3) as all of Tilley's other PCRA claims were on hold pending the disposition of this issue, resolution of his case would be materially advanced by accepting the appeal. *Tilley*, 780 A.2d at 651–652, 652 n. 5. Thus, we accepted jurisdiction, concluding that the PCRA court abused its discretion in not certifying the interlocutory order for appeal.

On the merits, we sustained the Commonwealth's appeal from the discovery order, concluding that, at the time of Tilley's trial in 1987, the law did not allow a white defendant to claim successfully that the Commonwealth improperly used its peremptory challenges to remove African–American potential jurors from the *venire*. Because Tilley was white, but was challenging the removal of African–Americans, we reasoned

that he was not entitled to the benefit of *Batson*. In *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the United States Supreme Court extended *Batson* to grant standing to a defendant to challenge any race-based use of peremptory challenges, whether or not the jurors so excluded share the same racial identity with the defendant. In *Tilley*, however, we determined that because *Powers* was not decided until 1991, after Tilley's trial, and because he failed to challenge "the Commonwealth's use of peremptory challenges at trial and again on appeal[,]" he was not entitled to retroactive application of *Powers*. *Tilley*, 780 A.2d at 652. Accordingly, we held that Tilley could not present a *Batson* or *Powers* claim and, therefore, did not establish "good cause" for discovery in a PCRA matter that is required by Pa.R.Crim.P. 902(E)(2) ("[o]n the first counseled petition in a death penalty case, no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause").[11]

Before we can entertain the propriety of the Discovery Order entered in the case *sub judice*, we must first determine whether we even have jurisdiction to consider the substance of the claims of the Commonwealth. The current jurisdictional problem is that the Commonwealth originally filed a request for certification, but the PCRA court never ruled on that request because it vacated the Discovery Order and granted reconsideration. The court later reinstated the Discovery Order, but the Commonwealth never took any action to reintroduce or reinstate its request for certification. Instead, the Commonwealth filed the instant appeal to this Court, without giving the PCRA court an opportunity to determine whether it wished to certify the Discovery Order for appeal.

The Commonwealth argues that it complied with the dictates of *Tilley* in order to enable this Court to rule on its Petition for Review.[12] Specifically, it notes that it filed a

11. We also rejected an ineffective assistance of counsel claimed raised by Tilley in this regard.

12. The Commonwealth cites to Pennsylvania Rule of Appellate Procedure 1503 for the proposition that any error in nomenclature or filing

request for certification of an interlocutory appeal, equivalent to a Petition for Permission to Appeal, upon which the PCRA court never ruled. Pennsylvania Rule of Appellate Procedure 1311(b) provides that where the trial court fails to act on a Petition for Permission to Appeal within thirty days of it being filed, it shall be deemed denied. Because the Commonwealth effectively filed a Petition for Permission to Appeal on June 28, 2001, and because the PCRA court did not grant or deny that Petition by July 28, 2001, the Commonwealth submits that it was deemed denied, allowing the Commonwealth to file a Petition for Review in this Court. The Commonwealth avers that it had no duty to seek certification anew after the PCRA court vacated and reinstated the Discovery Order because such a request would have been futile due to the PCRA court's patent refusal to follow *Tilley.*

Irrespective of whether or not the Commonwealth, in its subjective judgment, deems an action "futile," our rules governing appellate procedure make it abundantly clear that to be entitled to file a Petition for Review in an appellate court, the Commonwealth must ask the trial court for permission to appeal. Although the Commonwealth filed such a request originally, the vacatur of the Discovery Order on reconsideration rendered the Petition for Permission to Appeal moot. It is important to note, as well, that the Commonwealth was the party seeking reconsideration in the PCRA court, so the decision of the PCRA court to grant reconsideration inured to its requested benefit. The Commonwealth has provided no authority to support its position that reinstatement of the Discovery Order somehow reinstated the Petition for Permission to Appeal. The Commonwealth's failure to re-file its request for certification of an interlocutory appeal requires us to refuse to accept jurisdiction of this matter as a Petition for Review.

 Having concluded that we cannot assert jurisdiction over this matter within the ambit of a Petition for Review, we must ascertain whether the collateral order doctrine permits

of a document appropriately termed a Petition for Review must be treated as a Petition for Review.

our consideration. Pennsylvania Rule of Appellate Procedure 313 provides as follows:

**(a) General Rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

**(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313. Unlike a Petition for Review, where the Commonwealth must first request, unsuccessfully, permission from the "lower" court to file an appeal,[13] the collateral order doctrine conveys the **right** to appeal simply by filing a Notice of Appeal, provided that the party appealing has satisfied the three-pronged prerequisite: (1) the order must be separable from and collateral to the main cause of action; (2) the right involved must be too important to be denied review; and (3) if review is postponed, the claim will be irreparably lost.

This case presents some similarities to *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999), where the plaintiffs alleged that Dr. Schwartz committed dental malpractice. The plaintiffs subpoenaed the Bureau of Professional and Occupational Affairs (Bureau) for production of the investigative file, compiled by the Bureau, pertaining to complaints filed against Dr. Schwartz. The Bureau asserted governmental and executive privilege and the doctor-patient privileges of Dr. Schwartz' other patients. Nevertheless, the trial court directed the Bureau to produce the investigative file. After the Commonwealth Court quashed the Bureau's appeal as interlocutory, this Court concluded that the discovery order was reviewable as a collateral order.

Discussing the first requirement of separability, we held that the issue of privilege was separate from the merits of the

13. As explained above, where the court refuses to certify an appeal, the party challenging the interlocutory order can request that the appellate court exercise its discretion to take cognizance of the case, which is akin to our process for considering Petitions for Allowance of Appeal.

underlying dispute and, therefore, collateral to a determination on the merits. *Id.* at 551. We reasoned that even though the plaintiffs sought the discovery for the purpose of helping them present the underlying malpractice case against Dr. Schwartz, determining whether the discovery was appropriate did not **require consideration of the merits** of the underlying dispute. *Id.*; *accord Melvin v. Doe*, 575 Pa. 264, 836 A.2d 42, 46 (2003) (an order requiring discovery of the identities of anonymous defendants was appealable collaterally because review of the discovery order did not require consideration of the merits of the underlying defamation action).

In the present matter, the question posed by the Commonwealth, whether the PCRA court properly permitted discovery of King's notes, is clearly separable from the global contention raised by Dennis that he is unfairly incarcerated and awaiting execution. Our review of the propriety of the Discovery Order is not inextricably entangled with the resolution of the PCRA Petition such that we cannot separate out the Discovery Order for collateral review. While our disposition of the PCRA Petition may ultimately turn on the decision whether or not to grant discovery, the threshold issue of entitlement to discovery does not turn on the resolution of the Petition.

Passing over the importance requirement for the moment, we have held that "[t]here is no effective means of reviewing after a final judgment an order requiring the production of putatively protected material." *Ben*, 729 A.2d at 552 (internal quotation omitted). Just as the Bureau's claims would be effectively precluded if review of the order permitting discovery were postponed until final judgment in that case, the Commonwealth's assertion of work-product privilege in the case *sub judice* will be irreparably lost if we do not permit collateral review here.

Thus, the crux of the inquiry becomes the second prong of the collateral order doctrine, namely whether the right involved is too important to be denied review. In the instant matter, the Commonwealth's interest is in protecting its own work product. "For purposes of defining an order as a collateral order under Rule 313, it is not sufficient that the

issue be important to the particular parties. Rather[,] it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209, 1213–1214 (1999); *see Ben*, 729 A.2d at 552 (importance prong met at least in part because the order from which appeal was sought "impacts on individuals other than those involved in this particular litigation").

It is beyond question that the exercise of a privilege is an important right deeply rooted in public policy. The work product doctrine is one of the most fundamental tenets of our system of jurisprudence and, though Dennis presently would argue otherwise, inures most notably to the benefit of criminal defendants. In addition, the right of a defendant to discovery of a prosecutor's pre-trial and trial notes, in order to establish a claim of misconduct is one that clearly impacts individuals other than King and Dennis. The roadblock to concluding that this issue satisfies the importance prerequisite is the existence of *Tilley*.

In *Tilley*, we held that a PCRA petitioner could not demonstrate "good cause" for discovery of a prosecutor's notes to develop a claim of racial bias during jury selection. However, we based that decision on the fact that Tilley was Caucasian and had been tried in 1987, four years before the advent of *Powers*. Because *Powers* for the first time gave a Caucasian defendant the right to dispute race-based peremptory venire pool challenges, and because the United States Supreme Court had not declared that *Powers* was to apply retroactively, we held that Tilley could not mount such a challenge. *Tilley* does not control the present matter because Dennis is African–American and was tried after *Batson*, which means that he did have the right to allege that King impermissibly used the Commonwealth's peremptory challenges to exclude African–American jurors. Thus, facially, accepting jurisdiction of this matter would provide our Court with an opportunity to explain the substance of the "good cause" requirement for discovery as it relates to a claim brought pursuant to *Batson* and its progeny. Accordingly, we conclude that the

Discovery Order is a collateral order, from which the Commonwealth has taken an appeal as of right.

Nevertheless, we cannot decide this matter on substantive grounds. The simple fact is that Dennis presented to this Court on direct appeal a contention that King's use of peremptory challenges violated *Batson* and that his trial counsel was ineffective for failing to raise the issue at the time of jury selection. We discussed and rejected the argument as follows:

In voir dire, the prosecutor exercised twenty peremptory challenges, dismissing thirteen African–American venirepersons, two Hispanic venirepersons, and five Caucasian venirepersons. [Dennis] argues that the prosecutor's use of peremptory challenges violated [*Batson*] and that trial counsel was ineffective for failing to raise this issue. This argument is meritless. In the first instance, [Dennis] fails to indicate the race of forty-seven of the 170 venirepersons. Without such information, there is no basis for a [*Batson*] claim. *See, e.g., Commonwealth v. Johnson,* 542 Pa. 384, 668 A.2d 97, 102 (1995), *cert. denied,* 519 U.S. 827, 117 S.Ct. 90, 136 L.Ed.2d 46 (1996) [("[i]n order to establish prima facie case on *Batson* claim, defendant must make a record identifying the race of venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury")]. Furthermore, [Dennis] offers no evidence that the prosecutor exhibited racial animus in striking African–American venirepersons. Indeed, the impaneled jury included four African–American jurors and one African–American alternate, which indicates a lack of racial animus. Trial counsel was not ineffective for failing to raise a plainly baseless *Batson* claim.

*Dennis I,* 715 A.2d at 409 (internal citations modified). In order to be entitled to relief pursuant to the PCRA, a petitioner must demonstrate by a preponderance of the evidence "[t]hat the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3). "[A]n issue has been previously litigated if the highest appellate court in which the petitioner could have had review as a matter of right has ruled

on the merits of the issue." 42 Pa.C.S. § 9544(a)(2). Accordingly, this issue has been previously litigated and, therefore, the PCRA court erred in granting Dennis relief in the form of the Discovery Order.

The PCRA court relied on *Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717 (2000), to overcome the "previously litigated" bar. In *Basemore,* we noted that "this Court has generally enforced a requirement of a full and complete record of the asserted violation, as it would otherwise be impossible to conduct meaningful appellate review of the motivations of prosecutors in individual cases, particularly when such review often occurs years after the trial." *Id.* at 729. The PCRA court, and by extension Dennis, posits that our rejection of the *Batson* claim in *Dennis I* was premised on deficiencies in Dennis presentation of his claim that would be remedied if a court were to permit Dennis to develop a full and complete record. Thus, they rely on *Basemore* for the proposition that where a defendant or post-conviction petitioner fails to identify "the race of all the venirepersons removed by the prosecution, the race of the jurors who served and the race of the jurors acceptable to the Commonwealth who were stricken by the defense[,]" *Commonwealth v. Rollins,* 558 Pa. 532, 738 A.2d 435, 442–443 (1999), the courts should allow discovery to create that record.

In *Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621, 631 (1995), *cert. denied,* 516 U.S. 1128, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996), we set forth the method for presenting a *Batson* claim:

> To sustain a *prima facie* case of improper use of peremptory challenges, a defendant must establish the following: (1) the defendant is a member of a cognizable racial group and the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire; (2) the defendant can then rely on the fact that the use of peremptory challenges permits those to discriminate who are a mind to discriminate; and (3) the defendant, through facts and circumstances, must raise an inference that the prosecutor excluded members of the venire on account of their

race. This third prong requires defendant to make a record specifically identifying the race of all the venirepersons removed by the prosecution, the race of the jurors who served and the race of jurors acceptable to the Commonwealth who were stricken by the defense.

(internal citations modified). Dennis contends that his claim is not previously litigated because his direct appeal counsel was ineffective for failing to indicate the race of forty-seven venire persons when he raised this claim originally. However, what Dennis fails to address adequately is the fact that this Court provided an alternative rationale for denying the *Batson* claim—he presented no evidence that King exhibited racial animus.[14] Moreover, given that four of the jurors empaneled were African–American and given that King used seven of his peremptory challenges to eliminate non-African-American jurors, we presumed a lack of racial animus.

 Dennis presents an affidavit from his direct appeal counsel, apparently in an attempt to demonstrate the second prong of the ineffective assistance of counsel standard (reasonable basis),[15] which states direct appeal counsel's belief that he rendered ineffective assistance because he "did not present statistical evidence to support the inference of intentional discrimination and demonstrate a pattern of such discrimination by the Commonwealth." Supplemental Reproduced Record at 17b. This does not constitute, however, failure to present evidence that King exhibited racial animus, as statistics could never demonstrate an intention to remove African–American venire members from the juror pool. Accordingly, Dennis cannot demonstrate ineffective assistance of direct appeal counsel in his presentation of the *Batson* claim on

14. Additionally, we determined that the *Batson* claim was "plainly baseless." *Dennis I,* 715 A.2d at 409.

15. "[T]o be entitled to relief on a claim of ineffective assistance of counsel, the PCRA petitioner must satisfy a three-pronged test and demonstrate that: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of that counsel's deficient performance." *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1020 (2003).

direct appeal. Consequently, *Basemore* is of no assistance to Dennis, and the PCRA court erred in concluding that the *Batson* issue was not previously litigated.

## CONCLUSION

For the foregoing reasons, we accept jurisdiction of this matter as a collateral appeal and reverse the Discovery Order entered by the PCRA court. We remand the matter to that tribunal to consider the remainder of Dennis' PCRA Petition.

Chief Justice CAPPY files a dissenting opinion in which Justices NIGRO and SAYLOR join.

Chief Justice CAPPY.

I must respectfully dissent as I disagree with the majority that this court should exercise jurisdiction over this matter pursuant to the collateral order doctrine.

"The United States Supreme Court has stated that the 'collateral order doctrine' must be narrowly applied lest it be allowed to swallow the general rule and has characterized the requirements for an appealable collateral order as 'stringent.'" *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209, 1214 (1999) (citations omitted). In other words, invoking this court's jurisdiction for review of a collateral order is not to be undertaken lightly, and interpretation of the collateral order doctrine should be narrow in order to prevent erosion of the collateral order rule. *See generally id.*; *see also Melvin v. Doe*, 575 Pa. 264, 836 A.2d 42, 46–47 (2003).

In this case, the prong of the collateral order doctrine at issue is whether the "right involved is too important to be denied review." Majority opinion at 107, 859 A.2d at 1278. The majority submits that the alleged "important" question presented for review is the "substance of the 'good cause' requirement for discovery as it relates to a claim brought pursuant to *Batson* and its progeny." *Id.* at 108, 859 A.2d at 1278.[1]

1. The majority opinion is less than clear about what is the "important" issue for review, since on the prior page it speaks about the Common-

As noted by the majority opinion, *Ben' v. Schwartz,* 556 Pa. 475, 729 A.2d 547 (1999) makes clear that in order to grant review of the issue presented by the collateral order, the issue must impact more than just the parties at hand. We explained that

> [f]or purposes of defining an order as a collateral order under Rule 313 it is not sufficient that the issue be important to the particular parties. Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand.

*Id.* at 552 (citations omitted); *Geniviva,* 725 A.2d at 1213–14; *Melvin,* 836 A.2d at 47. Furthermore, "the overarching principle governing 'importance' is that ... an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." *Ben supra.*

Based upon this understanding of the "importance" requirement, I am not persuaded that the issue in this case is sufficiently "important" to invoke our jurisdiction under the collateral order doctrine. The majority intimates that this issue is sufficiently important since it "would provide our court with an opportunity to explain the substance of the 'good cause' requirement for discovery. . . ." *See* Majority opinion at 108, 859 A.2d at 1278. In *Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167 (1999), we examined the "good cause" requirement and indicated that a discovery request, at the collateral stage, must be supported by specific grounds and a claim of necessity in order to meet the good cause requirement. *Id.* at 1175. Thus, there is guidance of the definition of "good cause" as set forth in Pa.R.Crim.P. 902(E)(2). In addition, I do not agree that the issue raised in this case involve rights "deeply rooted in public policy" which would impact more than just the parties in this case. *See Geniviva,*

wealth's interest in protecting its own work product. *See* Majority opinion at 107, 859 A.2d at 1278. I, however, tend to agree with the issue as phrased on page 108, 859 A.2d page 1278 of the majority opinion, since ultimately, the question must relate to the PCRA court's discovery order in this case.

725 A.2d at 1213–14. This is no more than a review of an ordinary discovery order.

Furthermore, I find it unusual that after concluding that this issue is sufficiently "important" to invoke our jurisdiction under the collateral order doctrine, the majority then concludes that this "important" issue is previously litigated.[2] Thus, the majority invokes the collateral order doctrine to speak to the substance of the good cause requirement, but never analyzes this "important" issue because it is previously litigated. Accordingly, I must respectfully dissent.

Justices NIGRO and SAYLOR join this dissenting opinion.

---

**2.** This author expresses no opinion as to whether the issue is previously litigated or not; I am merely pointing out the paradoxical analysis set forth by the majority opinion.