Shaneen **JACKSONIAN**

v.

TEMPLE UNIVERSITY HEALTH SYSTEM FOUNDATION, Temple University Health System, Inc., Temple University Hospital, Inc., individually and/or trading as Temple University Hospital, Temple University Hospital, Temple Women's Health Center, E. Albert Reece, M.D., Hasan Ozgur Harmanli, M.D., Elcy Mathai, M.D., Amy Sandusky, M.D., and Silvia Bevilacqua, M.D.

Appeal of: Temple University Health System Foundation, Temple University Health System, Temple University Hospital, Temple University Women's Health Center, E. Albert Reece, M.D., Ozgur Harmanli, M.D., and Elcy Mathai, M.D.

Superior Court of Pennsylvania.

Argued Sept. 15, 2004.
Filed Nov. 30, 2004.

---

Lucia B. Morrone, Philadelphia, for appellants.

Paul D. Brandes, Conshohocken, for appellee.

BEFORE: FORD ELLIOTT, MONTEMURO *, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Temple University Health System, its related entities, and three physician co-defendants (collectively, TUHS) appeal the trial court's discovery order directing the Temple University Hospital (the hospital) to answer Shaneen Jacksonian's (Patient) interrogatories in her medical malpractice lawsuit against TUHS and the hospital. TUHS claims the information sought by the interrogatories is privileged and is protected from discovery by the Health Care Quality Improvement Act, 42 U.S.C. § 11101, *et seq.*, and the Peer Review Protection Act, 63 P.S. § 425.1, *et seq.* The trial court and Patient both maintain that TUHS's appeal should be quashed because the discovery order is not an appealable order. We conclude that the discovery order is not a collateral order and therefore is not appealable. Accordingly, without affecting TUHS's ability to raise this issue on appeal once a final order has been issued, we quash TUHS's instant appeal.

¶ 2 In 1999, Patient was a nineteen-year-old female receiving prenatal care at the

* Retired Justice assigned to Superior Court.

Hudson Clinic of Temple University Hospital. Between August 18, 1999, and August 19, 1999, the hospital and its physicians allegedly failed to diagnose and treat Patient for pre-term labor, which was allegedly caused by a placental abruption. The fetus did not survive. Patient filed an amended complaint against Temple University Health System, the hospital, the clinic, and six physicians involved in her care. The amended complaint alleged various negligence theories. The defendants filed an Answer with New Matter, in which they denied Patient's allegations.

¶ 3 On November 26, 2002, Patient served the defendants with Interrogatories. Relevantly, Interrogatories 74–82 requested information regarding queries made or not made by the hospital to the National Practitioner Data Bank (the Data Bank). The Data Bank collects information on physicians about any malpractice judgments and settlements, and any disciplinary actions like the suspension of a medical license. *See* 42 U.S.C. §§ 11131–32. The Data Bank then disseminates that information to professional review entities upon request. *See* 42 U.S.C. § 11135. The Act requires hospitals to report information to the Data Bank, and to request information from the Data Bank when physicians join a hospital and every two years thereafter. *See* 42 U.S.C. §§ 11133, 11135.

¶ 4 Patient's interrogatories first asked whether the hospital made any queries to the Data Bank regarding the six named defendant physicians as required by law. The interrogatories also requested the production of documents obtained from any queries it made to the Data Bank. Finally, the interrogatories asked that if the hospital did not make queries to the Data Bank regarding a particular defen-

dant physician as prescribed by law, the hospital provide an explanation for why a query was not made.

¶ 5 TUHS objected to these interrogatories, claiming that the information sought is privileged and protected by the Quality Health Care Improvement Act and the Pennsylvania Peer Review Protection Act. On December 16, 2003, Patient presented a Motion to Strike the defendants' objections. The Honorable Jacqueline Allen denied Patient's Motion to Strike after oral arguments on the matter. Patient then filed a Motion for Reconsideration, which Judge Allen granted. On February 10, 2004, Judge Allen issued an Order vacating her earlier order only to the extent that it had denied Patient's Motion to Strike TUHS's objections to Interrogatories 74, 76, 77, 79, 80, and 82. Judge Allen's Order expressly struck the defendants' objections to these interrogatories and directed the hospital to answer them within fifteen days. The Order did not strike the hospital's objections to Patient's Interrogatories 75, 78, and 81, which requested the production of documents obtained from Data Bank queries. Thus, the hospital was ordered to disclose only whether it made the relevant inquiries regarding the defendant physicians, and if it did not make them, it was ordered to disclose the names of those physicians and the reasons why it did not make the inquiries. On March 9, 2004, TUHS filed a Notice of Appeal, protesting that this information is protected.

¶ 6 TUHS raises the following questions for our review:

1. Whether or not the lower court erred when it granted [Patient's] Petition for Reconsideration of a Court Order compelling the production of documents and answers to interrog-

atories pertaining to the National Practitioner Data Bank when this information is privileged and protected from discovery by federal statute—the Health Care Quality Improvement Act, 42 U.S.C. § 11137, *et seq.*, and where disclosure of this information will subject defendants to a $10,000.00 fine for each count of information submitted?

2. Whether or not the lower court erred when it granted [Patient's] Petition for Reconsideration of a Court Order compelling the production of documents and answers to interrogatories pertaining to the National Practitioner Data Bank when this information is privileged and protected by the Pennsylvania Peer Review Protection Act, 63 P.S. § 425.1, *et seq.*, and where disclosure of this information will subject defendants to a $10,000.00 fine for each count of information submitted?

3. Whether or not the privileges enumerated in the Healthcare Quality Improvement Act, 42 USC § 11137 would be waived if information concerning National Practitioner Data Bank Inquiries is disclosed when there is no evidence that inquiries were not submitted?

Brief for Appellant at 3.

¶ 7 We must first address Patient's argument that this appeal is not properly before us because "the question of appealability implicates the jurisdiction of our court." *In re Estate of Israel,* 435 Pa.Super. 347, 645 A.2d 1333, 1336 (1994). Generally, only appeals from final orders are eligible for appellate review. *See, e.g., Jenkins v. Hosp. of Med. Coll. of Pa.,* 535 Pa. 252, 634 A.2d 1099, 1102 (1993).

TUHS argues that even though it is not a final order, the discovery order at issue is appealable because of the collateral order rule. The collateral order rule "permits an appeal as of right from a non-final order if it is separable from and collateral to the main action, involves a right too important to be denied review and, if the review is postponed, the right will be irreparably lost." *Slusaw v. Hoffman,* 2004 PA Super 354 ¶ 5, 861 A.2d 269, 272 (2004). The collateral order rule, codified at Pa. R.A.P. 313, must be interpreted narrowly. *See Melvin v. Doe,* 575 Pa. 264, 836 A.2d 42, 47 (2003). All three elements must be satisfied to permit review of an interlocutory appeal under the collateral order rule. *See Graziani v. Randolph,* 856 A.2d 1212, 2004 WL 1814275, ¶ 36 (Pa.Super.Aug.16, 2004). TUHS argues that all three elements are satisfied; we are unable to agree.

¶ 8 First, for a claim arising from a non-final order "to be separable and collateral, the nature of the issue reviewed must be such that it can be addressed without the need to analyze the central issue of the case." *Slusaw,* 861 A.2d at 272. An order is not separable if the matter being reviewed has the potential to resolve an issue in the case. *See Beltran v. Piersody,* 748 A.2d 715, 718 (Pa.Super.2000). In *Van der Laan v. Nazareth Hospital,* Ms. Van der Laan sued Nazareth Hospital for injuries she sustained in the hospital when she was attacked by an unidentified hospital patient. *See* 703 A.2d 540, 540 (Pa.Super.1997). Ms. Van der Laan alleged that the hospital knew of the patient's violent tendencies but failed to supervise the patient adequately. *See id.* The hospital appealed when the trial court issued a discovery order directing the hospital to produce the patient's hospital rec-

ords. *See id.* at 541. Our court quashed the appeal, holding that the discovery order was not a collateral order because it was not separable from the main cause of action. *See id.* at 542. Our court stated:

> The records at issue are sought to establish the Hospital's prior knowledge of the unidentified patient-attacker's violent tendencies. This knowledge is central to Van der Laan's negligence claim. Under the collateral order doctrine, *a discovery order covering material that is intertwined with the facts necessary to support the action is not separable from the action* and no appeal can be taken before final judgment.

*Id.* at 541 (emphasis added).

¶ 9 In the instant appeal, the discovery order directing the hospital to answer interrogatories is intertwined with the underlying malpractice claim in this case. If the interrogatories reveal that the hospital failed to make a requisite query to the Data Bank regarding a particular physician who is a defendant in this case, Plaintiff may use any negative information in the Data Bank regarding that physician to establish his or her negligence. *See* 45 C.F.R. § 60.11(a)(5). In addition, if the interrogatories reveal that the hospital failed to make a requisite query, the hospital's error will bolster Plaintiff's claim of corporate negligence against the hospital and the Temple University Health System. Thus, the matter being reviewed could resolve an issue in the underlying medical malpractice claim. *See Beltran,* 748 A.2d at 718. Accordingly, this element is not satisfied.

¶ 10 The second element asks whether "the right involved is too important to be denied review." Pa.R.A.P. 313(b). A right is important if "the inter-

ests that would potentially go unprotected without immediate appellate review of that issue are significant" when weighed against the interest of avoiding piecemeal litigation of appeals. *Vertical Res., Inc., v. Bramlett,* 837 A.2d 1193, 1200 (Pa.Super.2003). In addition, "it is not sufficient that the issue be important to the particular parties ... [I]t must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Melvin,* 836 A.2d at 47 (quoting *Geniviva v. Frisk,* 555 Pa. 589, 725 A.2d 1209, 1213–14 (1999)).

¶ 11 We agree with TUHS that a claim of privilege could satisfy this definition. Privilege can be a right too important to be denied review. *See Jones v. Faust,* 852 A.2d 1201, 1203 (Pa.Super.2004); *PECO Energy Co. v. Ins. Co. of N. Am.,* 852 A.2d 1230, 1233 (Pa.Super.2004). We find that the importance prong of the collateral order rule is not satisfied, however, because the discovery order at issue does not involve privileged information. The interrogatories only ask: (1) whether the hospital made inquiries on particular individuals as prescribed by law, (2) the names of any defendant physicians for whom inquiries were not made, and (3) if there were any defendant physicians for whom inquiries were not made, the hospital's reason for not making inquiries regarding those defendant physicians. The statutes on which TUHS relies prohibit only the disclosure of the information *contained in* the Data Bank. *See* 42 U.S.C. § 11137(b)(1); 63 P.S. § 425.4. These statutes in no way imply that a hospital cannot disclose whether it *made inquiries to* the Data Bank, or why it did not make inquiries.

¶ 12 Furthermore, the federal regulations accompanying the Health Care Quali-

ty Act do not treat such evidence as privileged. They acknowledge that an attorney could have evidence of whether a hospital made the requisite queries to the Data Bank:

(a) Information in the Data Bank will be available, upon request, to the persons or entities ... as described below:

* * * *

(5) An attorney ... who has filed a medical malpractice action or claim ... who requests information regarding a specific physician ... who is also named in the action or claim. Provided, that this information will be disclosed only upon the submission of evidence that the hospital failed to request information from the Data Bank as required ....

45 C.F.R. § 60.11(a)(5). This regulation anticipates that, under certain circumstances, an attorney pursuing a medical malpractice claim could have evidence that the hospital made or failed to make the requisite inquiries to the Data Bank. *See* 45 C.F.R. § 60.11(a)(5). Thus, the information sought through the interrogatories at issue is not protected from discovery.

¶ 13 In their argument, the appellants rely heavily on *Ben v. Schwartz,* 556 Pa. 475, 729 A.2d 547 (1999). *Ben* is a dental malpractice case in which the trial court ordered the Bureau of Professional and Occupational Affairs to produce investigative files relating to the defendant-dentist. *See id.* at 549. The Bureau appealed, claiming that the files were privileged. *See id.* Our Supreme Court held that the discovery order satisfied all three prongs of the collateral order rule. *See id.* at 551–53. The Court held that the importance prong of the rule was satisfied because "release of information would hinder the investigative powers of the administrative agency because witnesses may not feel free to provide information." *Id.* at 552. Because the issue was rooted in public policy and it affected more than just the parties in this litigation, the Court held that the order was collateral. *See id.*

¶ 14 Unlike in *Ben,* the protection of the information sought here is important only to the parties involved in this litigation. There is no public policy for protecting from disclosure whether a hospital made queries to the Data Bank, or why it chose not to make queries. Hospitals are required to make queries when physicians join a hospital and every two years thereafter. *See* 42 U.S.C. § 11135. Forcing this particular hospital to disclose whether it made queries will not dissuade other hospitals or approved entities from making queries. Such information is not privileged, and there is no reasonable basis on which to conclude that protection of that information would be "deeply rooted in public policy going beyond the particular litigation at hand." *Id.* (quoting *Geniviva,* 725 A.2d at 1213–14).

¶ 15 We also find the recent case of *Commonwealth v. Dennis,* —— Pa. ——, 859 A.2d 1270 (2004), inapplicable. In *Dennis,* our Supreme Court concluded that the information sought by the discovery order satisfied the importance prong of the collateral order doctrine because: (1) the information sought by the discovery order was privileged, and (2) the issue "impact[ed] individuals other than" those involved in the litigation at hand. *Id.,* at 1278. In contrast, the information sought in the instant case is not privileged, and it does not go beyond the particular litigation at hand. Thus, as Chief Justice Cappy wrote in his dissent, "this case [does not] involve rights 'deeply rooted in public poli-

cy' which would impact more than just the parties in this case. This is no more than a review of an ordinary discovery order." *Id.*, at 1281–82 (Cappy, C.J., dissenting) (quoting *Geniviva*, 725 A.2d at 1213–14). Accordingly, the instant order fails the importance prong of the collateral order rule.

¶ 16 Because an order must satisfy all three prongs of the rule to qualify as a collateral order, *see Graziani*, 856 A.2d at 1224, we do not need to address the third prong of the collateral order rule. The order is interlocutory and the appeal is not properly before us. Therefore, we hereby quash TUHS's appeal, without impairing their ability to raise the same issues once a final order has been entered.

¶ 17 Appeal **QUASHED**.